## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No. 0:12-cv-61826-WJZ

MATTHEW BENZION, individually and on
behalf of others similarly situated,

                    Plaintiff,

        v.

VIVINT, INC., a Utah corporation,                    **CLASS ACTION**

                    Defendant.                    **JURY TRIAL DEMANDED**

_____/

## SECOND AMENDED COMPLAINT

1.      Plaintiff Matthew Benzion brings this action against Defendant Vivint, Inc. to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.      Specifically, Plaintiff brings claims against Defendant pursuant to 47 U.S.C. § 227(b), for causing unsolicited calls to be made to the cell phones of Plaintiff and others using an automatic telephone dialing system and/or artificial or prerecorded voice.

3.      Plaintiff Benzion also brings claims on behalf of himself and others for violations of the TCPA's company-specific and National Do Not Call Registry do-not-call prohibitions.  47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(d)(3); 47 U.S.C. § 227(c)(5).

## JURISDICTION AND VENUE

4.      The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012).  The Court further has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"),

28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that section apply to this action.

5.     This Court has personal jurisdiction over Defendant and venue is proper because: (1) Defendant does business in this District, and (2) a substantial part of the events giving rise to Plaintiff's claims occurred here, including the unwanted calls that Defendant caused to be made to Plaintiff Benzion's cellular telephone using an automatic telephone dialing system and/or pre-recorded voice.

**PARTIES**

6.     Plaintiff Matthew Benzion is a natural person and resident of Broward County, Florida.

7.     Defendant Vivint, Inc. ("Vivint") is a Utah corporation with its principal place of business at 4931 North 300 West, Provo, Utah 84604.  Vivint provides home security and other services nationwide, including within this District.

**FACTS**

8.     Defendant is a home automation company that provides and markets home security products and services, among other things.

9.     Within the four years prior to the filing of this action, Defendant—whether directly, through affiliate marketers, or otherwise—used equipment to dial the cellular telephone numbers of potential customers, including Plaintiff.  On information and belief, the dialing equipment used had the capacity to dial numbers without human intervention.

10.    Many if not all of these calls also utilized artificial and/or prerecorded voice messages to market Vivint's home security products and services.

2

11.     Unfortunately, many of the people whose cell phones were called as a result of Defendant's telemarketing practices never actually consented to receive such calls, and many numbers were also called despite direct requests to stop and/or registration with the National Do Not Call Registry.

12.     These are unsolicited "cold calls" made for the purpose of generating leads for sales of Defendant's products and/or services.  On information and belief, many of the individuals targeted by Vivint and its lead generators were called more than once.

13.     Attached are consumer telemarketing complaints about Vivint that Plaintiff has received through a Freedom of Information Act request to the Federal Communications Commission.  Many of these consumers' complaints are similar to the Plaintiff's story:  They received multiple prerecorded message calls from Vivint, and Vivint failed to honor the National Do Not Call Registry or even direct requests that the calls stop.  (Consumer Complaints, attached hereto as Exhibit 1.)

### THE LEGAL BASIS OF THE CLAIMS

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .

3

> Banning such automated or prerecorded telephone calls to the
> home, except when the receiving party consents to receiving the
> call . . . , is the only effective means of protecting telephone
> consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18,

2012).

15.     Under the TCPA, as interpreted by the FCC, a person or entity can be liable for

calls made on its behalf even if that person or entity did not directly dial those calls.

16.     The FCC has explained that its "rules generally establish that the party on whose

behalf a solicitation is made bears ultimate responsibility for any violations."  *See* Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and

Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

17.     In 2008, the FCC reiterated that "a company on whose behalf a telephone

solicitation is made bears the responsibility for any violations." *See* Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for

Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008)

(specifically recognizing "on behalf of" liability *in the context of a Robocall* sent to a consumer

by a third party on another entity's behalf under 47 U.S.C. 227(b)).

18.     In May of 2013, the FCC reinforced this issue.  *See In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, --- FCC Rcd. --- (F.C.C. May 9, 2013)

(hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable

under federal common law agency-related principles for violations of either section 227(b) or

227(c) committed by telemarketers that initiate calls to market its products or services."). The

FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability

requires a finding of formal agency and immediate direction and control over the third-party who

placed the telemarketing call. *Id.* n.107.

19.  The 2013 FCC Order further explained:

> To provide guidance in this area, we find that the following are illustrative
> examples of evidence that may demonstrate that the telemarketer is the
> seller's authorized representative with apparent authority to make the
> seller vicariously liable for the telemarketer's section 227(b) violations.
> For example, apparent authority may be supported by evidence that the
> seller allows the outside sales entity access to information and systems
> that normally would be within the seller's exclusive control, including:
> access to detailed information regarding the nature and pricing of the
> seller's products and services or to the seller's customer information. The
> ability by the outside sales entity to enter consumer information into the
> seller's sales or customer systems, as well as the authority to use the
> seller's trade name, trademark and service mark may also be relevant. It
> may also be persuasive that the seller approved, wrote or reviewed the
> outside entity's telemarketing scripts. Finally, a seller would be
> responsible under the TCPA for the unauthorized conduct of a third-party
> telemarketer that is otherwise authorized to market on the seller's behalf if
> the seller knew (or reasonably should have known) that the telemarketer
> was violating the TCPA on the seller's behalf and the seller failed to take
> effective steps within its power to force the telemarketer to cease that
> conduct. At a minimum, evidence of these kinds of relationships – which
> consumers may acquire through discovery, if they are not independently
> privy to such information – should be sufficient to place upon the seller
> the burden of demonstrating that a reasonable consumer would not
> sensibly assume that the telemarketer was acting as the seller's authorized
> agent.
>
> [ ] In sum, under our current rules and administrative precedent
> interpreting and implementing  sections 227(b) and 227(c), we do not
> think that an action taken for the benefit of a seller by a third-party
> retailer, without more, is sufficient to trigger the liability of a seller under
> section either section 227(c) or section 227(b). However, we see no reason
> that a seller should not be liable under those provisions for calls made by a
> third-party telemarketer when it has authorized that telemarketer to market
> its goods or services. In that circumstance, the seller has the ability,
> through its authorization, to oversee the conduct of its telemarketers, even
> if that power to supervise is unexercised. In the case of either actions to
> enforce section 227(b) or actions to enforce do-not-call restrictions under
> section 227(c), we stress that nothing in this order requires a consumer to
> provide proof – at the time it files its complaint – that the seller should be
> held vicariously liable for the offending call.

*Id.* at ¶¶ 46-47).

*<div align="center">The TCPA prohibits telemarketing calls to persons<br/>and entities whose numbers are listed on the Do Not Call Registry,<br/>unless the caller has the recipient's written consent</div>*

20.     In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the FTC adopted the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, which was later amended in 2003.  Among other things, the amended TSR established the national Do Not Call Registry, a federally-maintained listing of persons who do not wish to receive telephone solicitations.  *See* 47 C.F.R. § 64.1200(c)(2).   A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.*

21.     The TCPA and its implementing regulations prohibit persons and entities from initiating telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).  A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).

22.     The regulations contain a safe harbor provision that exempts from liability a person or entity making telephone solicitations who has obtained the subscriber's prior express invitation or permission to make the call.  47 C.F.R. § 64.1200(c)(2)(ii).

23.     The required prior express invitation or permission must be evidenced by a signed, written agreement between the consumer and seller that states the consumer agrees to be

contacted by this seller, and includes the telephone number to which the calls may be placed.  *Id.*
§ 64.1200(c)(2)(ii).

### *The TCPA bans all autodialer calls placed to cell phones*

24.     The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

25.     The TCPA categorically bans persons and entities from initiating a telephone call using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service.  *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

## FACTS RELATING TO PLAINTIFF BENZION

26.     Starting in or about March 2012 and likely even earlier, Plaintiff Benzion received calls to his cell phone—sometimes multiple times a day—using prerecorded voice messages to advertising a "free" wireless security system in exchange for putting the company's sign in his yard.

27.     These calls came from various numbers, including but not limited to (503) 563-0357, (503) 902-8127, and (503) 902-8279.

28.     After answering one of these calls from (503) 902-8279 on or about April 9, 2012, Plaintiff Benzion went through the call's process to speak with a live representative, who informed Plaintiff that he was promoting Vivint.

29.     Upon information and belief, this statement is true:  The call was made by Vivint, in order to promote its goods and services.  Alternatively, the calls were made on behalf of Vivint.

30.     As evidenced by, among other things, the large volume of calls and their use of prerecorded voice messages, many if not all of these calls from or on behalf of Defendant were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiff's number without human intervention. On information and belief, no human being pressed the digits of Plaintiff's cellular telephone number into a phone to make any call to Plaintiff.  On further information and belief, at least some of Vivint's lead generation telemarketing calls were made using an automatic telephone dialing system service provided by Five9, Inc.

31.     Plaintiff Benzion received calls on at least the following dates: April 4, 2012, April 5, 2012, April 9, 2012, April 10, 2012, April 13, 2012, April 17, 2012, April 18, 2012, and April 25, 2012.  Discovery from Defendant or third parties that work with Defendant to promote its goods and services will almost certainly show that there were more calls.

32.     Plaintiff has never given Defendant permission to contact his cell phone, whether through the use of an automatic telephone dialing system, prerecorded or artificial voice, or otherwise.  Plaintiff's number was registered with the National Do-Not-Call Registry on April 14, 2012.

33.     Plaintiff at least twice demanded that the calls cease.

34.     During one call in April 2012, the prerecorded voice message Defendant played prompted Plaintiff to press a certain number to be removed from the call list.  Plaintiff pressed that number, but received calls thereafter.  This had no effect in stopping Defendant's calls to Plaintiff's cell phone; Defendant continued to call Plaintiff's cell phone via an autodialer and/or using prerecorded voice messages.

35.     Furthermore, on or about April 9, 2012, Plaintiff spoke with a Vivint representative directly and demanded that the calls cease.

36.     On information and belief, Plaintiff's cell phone was also called at least twice after being registered with the National Do Not Call Registry, including on or about May 21, 2012 and May 22, 2012, from number (503) 457-1074.

37.     Plaintiff was damaged by Defendant's calls.  His privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted phone calls forcing him to divert attention away from his work and other activities, especially given Defendant's complete disregard of his requests to cease and the registration of his number with the National Do Not Call Registry.

## VIVINT'S USE OF THIRD PARTY TELEMARKETERS

38.     In order to generate customers, Vivint engages in marketing through the use of telephones, both directly and through use of "lead generators," as well as third party telemarketers.

39.     Vivint has controlled and has had the contractual right to control the third party telemarketers.

40.     As Vivint utilizes third party marketers to sell its exclusive products, it grants these entities access to information and systems that normally would be within Vivint's exclusive control, including access to detailed information regarding the nature and pricing of Vivint's alarm systems and protection plans.

41.     Vivint's third party marketers also have the ability to enter consumer information into the seller's lead, sales and customer systems, despite the fact that payments made for those services are made directly to Vivint.

9

42.     Vivint's third party marketers also have the ability to use the seller's trade name, trademark and service mark.

43.     Vivint works with its third party marketers on developing a script for use in the telemarketing of its products.

44.     Vivint has been receiving complaints about calls from this lead generator and has failed to take adequate steps to have such conduct cease.  Indeed, the Plaintiff herself put Vivint on notice that he was receiving these calls before the Plaintiff received more calls from same company.

45.     Vivint's use of third party telemarketers is in conjunction with their own marketing department, which attempts to complete the sale on the same telephone call that was made by the third party telemarketer, as it occurred on the call to the Plaintiff.

46.     Vivint failed to take steps to ensure that the entities that it used to promote its goods or services were complying with federal telemarketing law.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Section 227(b) Class)

47.     Plaintiff realleges and incorporates the foregoing allegations as if fully set forth herein.  Plaintiff brings this Count I on behalf of himself and the Section 227(b) Class defined below, only.

48.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…."  47 U.S.C. § 227(b)(1)(A)(iii).

10

49.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991: Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 FCC Rcd 559, 566 (2007)).

50.     Defendant used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Section 227(b) Class defined below.  Many of these calls, including calls to Plaintiff, utilized prerecorded voice messages.

51.     These calls were made without regard to whether or not Defendant had first obtained the express consent of the called party to make such calls.  In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Section 227(b) Class when its calls were made.

52.     As such, Defendant's calls were willful or, at a minimum, negligent.  *See* 47 U.S.C. § 312(f)(1).

53.     Defendant has, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and/or artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Section 227(b) Class without their prior express permission.

54.     As a result of Defendant's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Section 227(b) Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

55.     Because Defendant knew or should have known that Plaintiff and the other members of the putative Section 227(b) Class had not given prior express consent to receive its autodialed and prerecorded voice calls to their cellular telephones—and/or willfully used an automatic telephone dialing system and/or prerecorded voice to call the cell phones of Plaintiff and the other members of the Class without prior express permission—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Section 227(b) Class pursuant to Section 227(b)(3) of the TCPA.

**Class Allegations**

56.     Plaintiff brings this case on behalf of a class (the "Section 227(b) Class") defined as follows:

> All persons in the United States who, within four years prior to the filing of this action, Defendant or some person on Defendant's behalf called on their cell phone using an artificial or prerecorded voice or device with the capacity to dial numbers without human intervention, where Defendant's records fail to indicate prior express permission from the recipient to make such call.

57.     Upon information and belief, Defendant called more than 100 phone numbers in the four years prior to the filing of this action utilizing a device with the capacity to dial numbers without human intervention or a message that had been recorded ahead of time, where Defendant did not have prior express permission for such call.

58.     Common questions of law or fact exist as to all members of the putative Section 227(b) Class and predominate over any questions solely affecting any individual member, including Plaintiff.  Such questions common to the Section 227(b) Class include but are not limited to:

    a.   Whether Defendant used an "automatic telephone dialing system" or "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    b.   Whether Defendant had prior express permission to contact Plaintiff and the other members of the putative Section 227(b) Class when it made calls to their cell phones using an automatic telephone dialing system and/or artificial or prerecorded voice; and

    c.   Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the members of the putative Section 227(b) Class are entitled to trebled damages.

59.    Plaintiff's claims are typical of the claims of the other members of the putative Section 227(b) Class.  The factual and legal bases of Defendant's liability to Plaintiff and the other members of the putative Section 227(b) Class are the same:  Defendant violated the TCPA by causing the cellular telephone number of each member of the putative Class, including Plaintiff, to be called using an automatic telephone dialing system and/or artificial or prerecorded voice without prior express permission.

60.    Plaintiff will fairly and adequately protect the interests of the Section 227(b) Class.  Plaintiff has no interests that might conflict with the interests of the Class.  Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

61.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the putative Section 227(b) Class, such that joinder of all members is impracticable.

62.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

63.     Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Section 227(b) Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the putative Section 227(b) Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

64.     The identity of the Section 227(b) Class is, on information and belief, readily identifiable from the records of Defendant and/or any affiliated marketers.

WHEREFORE, Plaintiff Matthew Benzion, on behalf of himself and the other members of the Section 227(b) Class, prays for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  An injunction prohibiting Defendant from using an automatic telephone dialing system or artificial or prerecorded voice to call numbers assigned to cellular telephones without the prior express consent of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

14

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Company-Specific DNC Class)

65.     Plaintiff Benzion realleges and incorporates the foregoing allegations as if fully set forth herein. This Count II is brought on behalf of Plaintiff and the Company-Specific DNC Class defined below, only.

66.     It is a violation of the TCPA to make a telephone solicitation to any person that has asked not to receive such calls. 47 C.F.R. § 64.1200(d)(3).

67.     Telemarketers like Vivint must honor a do-not-call request immediately.  In its July 3, 2003, Final Order implementing 47 C.F.R. § 64.1200(d)(3), the FCC explained:

> We note that the Commission's rules require that entities must record company-specific do-not-call requests and place the subscriber's telephone number on the do-not-call list at the time the request is made.

> Therefore, telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interests of the telemarketing industry.

> Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14069-14070 (2003).

68.     Vivint claims to be a technologically savvy company.  Upon information and belief, that claim is true:  Vivint had the capacity to cease calling immediately upon demand, but instead made at least two additional calls to Plaintiff and each of the Company-Specific DNC Class members in spite of this.

69.     In any event, at least two of Vivint's calls to Plaintiff and the Company-Specific DNC Class were made after a reasonable time had elapsed from the time of the demand to stop.

70.    A private right of action is available for consumers who have received more than one call within a twelve-month period, in violation of FCC regulations like 47 C.F.R. § 64.1200(d)(3).  47 U.S.C. § 227(c)(5).

71.    As a result of Defendant's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Company-Specific DNC Class were harmed and are each entitled to up to $500.00 in damages for each violation, which amount may be trebled if the violations are proven to have been willful or knowing.  Plaintiff and the Company-Specific DNC Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(c)(5).

## Class Allegations

72.    Plaintiff brings this Count on behalf of a class (the "Company-Specific DNC Class") defined as follows:

> All persons in the United States who, within four years prior to the filing of this action, ongoing, Defendant or some person on Defendant's behalf called at least twice in any twelve month period in order to promote Vivint goods and/or services, where both calls were made outside a reasonable time after a request that calls to the phone number stop.

73.    Upon information and belief, based upon Plaintiff's experience, Defendant called more than 100 phone numbers at least twice each in the four years prior to the filing of this action, where the recipient of such call had previously demanded that further calls promoting Defendant's goods and/or services cease.

74.    Common questions of law or fact exist as to all members of the putative Company-Specific DNC Class and predominate over any questions solely affecting any individual member, including Plaintiff.  Such questions common to the Company-Specific DNC Class include but are not limited to:

a. Whether Defendant had a duty to cease calling immediately once it received a request for cessation, or alternatively, whether the time within which it ceased calling was reasonable; and

b. Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the members of the putative Company-Specific DNC Class are entitled to trebled damages.

75.    Plaintiff's claims are typical of the claims of the other members of the putative Company-Specific DNC Class.  The factual and legal bases of Defendant's liability to Plaintiff and the other members of the putative Company-Specific DNC Class are the same:  Defendant violated the TCPA by causing telemarketing calls to be made to persons after they had requested not to be called.

76.    Plaintiff will fairly and adequately protect the interests of the Company-Specific DNC Class.  Plaintiff has no interest that might conflict with the interests of the Company-Specific DNC Class.  Plaintiff is interested in pursuing these claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

77.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail.  There are, on information and belief, thousands of members of the putative Company-Specific DNC Class, such that joinder of all members is impracticable.

17

78.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

79.     Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Company-Specific DNC Class, thereby making relief appropriate with respect to the Company-Specific DNC Class as a whole.  Prosecution of separate actions by individual members of the putative Company-Specific DNC Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Company-Specific DNC Class that would establish incompatible standards of conduct.

80.     The identity of the Company-Specific DNC Class should be readily identifiable from the records of Defendant and/or any marketers that made calls on its behalf.  If it is not, this may constitute a separate violation of the TCPA.

WHEREFORE, Plaintiff Matthew Benzion, on behalf of himself and the other members of the Company-Specific DNC Class, prays for the following relief:

      a.   A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

      b.   An injunction prohibiting Defendant from causing persons' telephone numbers to be called after requests that such calls cease;

      c.   An award of actual and statutory damages; and

      d.   Such further and other relief the Court deems reasonable and just.

<u>**COUNT III**</u>
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Registry Class)**

81.     Plaintiff realleges and incorporates the foregoing allegations as if fully set forth

herein.  This Count III is brought against Defendant on behalf of Plaintiff and the National DNC

Registry Class defined below.

82.     The TCPA provides that "[n]o person or entity shall initiate any telephone

solicitation to … [a] residential telephone subscriber who has registered his or her telephone

number on the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the Federal Government."  47 C.F.R. § 64.1200(c)(2); 47

U.S.C. § 227(c).[1]

83.     Defendant or some party on its behalf initiated more than one telephone

solicitation in a 12-month period to each of the telephone numbers of Plaintiff and the other

members of the National DNC Registry Class, despite the fact that Plaintiff and the other

members of the National DNC Registry Class had all registered their numbers on the National

Do Not Call Registry of persons who do not wish to receive telephone solicitations.

84.     Defendant has, therefore, violated Section 227(c) of the TCPA.  *See* 47 C.F.R. §

64.1200(c)(2).

85.     The TCPA entitles anyone who has received more than one telephone call within

any 12-month period by or on behalf of the same entity in violation of, among other things, 47

C.F.R. § 64.1200(c)(2) and its prohibition against calling telephone numbers registered on the

---

[1] The FCC has clarified that this prohibition applies equally with respect to cell phones.  *See* 47
C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to
any person or entity making telephone solicitations or telemarketing calls to wireless telephone
numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278,
FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991.'").

National Do Not Call Registry, to injunctive relief and the greater of either actual damages or up to $500 per violation. 47 U.S.C. § 227(c)(5). This amount can be trebled where the defendant "willfully or knowingly" violated the statute. *Id.*

86.     On information and belief, including based on the experience of Plaintiff in receiving multiple calls from or on behalf of Defendant despite having registered with the National Do Not Call Registry, Defendant willfully and/or knowingly violated the TCPA, such that treble damages are warranted. 47 U.S.C. § 227(c)(5).

## Class Action Allegations

87.     Plaintiff brings this Count on behalf of a class (the "National DNC Registry Class") defined as follows:

> All persons in the United States to whose telephone number Defendant or some person on Defendant's behalf initiated more than one call in any 12-month period within the four years prior to the filing of this action, where (1) the telephone number was registered on the National Do Not Call Registry, (2) the calls were made for the purpose of promoting Defendant's goods and/or services, and (3) Defendant's records do not contain a signed, written agreement with the person stating that the person agrees to be contacted at such number.

88.     Upon information and belief, Defendant caused more than 100 telephone numbers to each be called more than once within any 12-month period in the four years prior to the filing of this action for the purpose of promoting Defendant's goods and/or services, despite such numbers being registered on the National Do Not Call Registry and the lack of express, written permission for such calls.

89.     Common questions of law or fact exist as to all members of the putative National DNC Registry Class and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the National DNC Registry Class include but are not limited to:

a.   Whether the telemarketing calls initiated by or on behalf of Defendant to the telephone numbers of Plaintiff and the other members of the National DNC Registry Class violated the TCPA, where such numbers were registered with the National Do Not Call Registry; and

b.   Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the other members of the National DNC Registry Class are entitled to trebled damages.

90.    Plaintiff's claims are typical of the claims of the other members of the putative National DNC Registry Class.  The factual and legal bases of Defendant's liability to Plaintiff and the other members of the National DNC Registry Class are the same:  Defendant violated the TCPA by initiating calls to the telephone numbers of each member of the putative Class, including Plaintiff, despite the fact that such persons had registered their numbers on the National Do Not Call Registry of persons who do not wish to receive telephone solicitations.

91.    Plaintiff will fairly and adequately protect the interests of the National DNC Registry Class.  Plaintiff has no interests that might conflict with the interests of the National DNC Registry Class.  Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

92.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action

would entail.  There are, on information and belief, thousands of members of the National DNC Registry Class, such that joinder of all members is impracticable.

93.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

94.     Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the National DNC Registry Class, thereby making relief appropriate with respect to the Class as a whole.  Prosecution of separate actions by individual members of the National DNC Registry Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

95.     The identity of the National DNC Registry Class is, on information and belief, readily identifiable from the records of Defendant and/or any parties that made calls on its behalf.

WHEREFORE, Plaintiff Matthew Benzion, on behalf of himself and the other members of the National DNC Registry Class, prays for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  An injunction prohibiting Defendant from calling telephone subscriber's numbers without such persons' prior express written consent;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated:      September 9, 2013                                          Respectfully submitted,

                                                                       MATTHEW BENZION, individually
                                                                       and on behalf of others similarly
                                                                       situated


                                                                       By:      /s/ Scott D. Owens
                                                                           Scott D. Owens (No. 597651)
                                                                           SCOTT D. OWENS, P.A.
                                                                           664 E. Hallandale Beach Blvd.
                                                                           Hallandale, FL 33009
                                                                           Telephone: (954) 589-0588
                                                                           Facsimile: (954) 337-0666
                                                                           scott@scottdowens.com


                                                                           Edward A. Broderick
                                                                           Anthony I. Paronich
                                                                           (admitted *pro hac vice*)
                                                                           Broderick Law, P.C.
                                                                           125 Summer St., Suite 1030
                                                                           Boston, MA 02110
                                                                           Telephone: (617) 738-7080
                                                                           ted@broderick-law.com
                                                                           anthony@broderick-law.com


                                                                           Matthew P. McCue
                                                                           (admitted *pro hac vice*)
                                                                           Law Office of Matthew P. McCue
                                                                           1 South Avenue, Suite 3
                                                                           Natick, MA 01760
                                                                           Telephone: (508) 655-1415
                                                                           mmccue@massattorneys.net


                                                                           Alexander H. Burke
                                                                           (admitted *pro hac vice*)
                                                                           BURKE LAW OFFICES, LLC
                                                                           155 N. Michigan Ave., Suite 9020
                                                                           Chicago, IL 60601
                                                                           Telephone: (312) 729-5288
                                                                           aburke@burkelawllc.com

23

Daniel J. Marovitch
(admitted *pro hac vice*)
MAROVITCH LAW FIRM, LLC
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
Telephone: (312) 533-1605
dmarovitch@marovitchlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

s/ *Scott D. Owens*
Scott D. Owens, Esq.

24