IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.  0:12-CV-61826-WJZ

**MATTHEW BENZION, individually and
on behalf of others similarly situated,**

    **Plaintiff,**

**vs.**

**VIVINT, INC., a Utah corporation,**

    **Defendant.**

_____/

**VIVINT, INC.'S MOTION TO STRIKE AND EXCLUDE THE
AFFIDAVIT OF PLAINTIFF'S PROPOSED EXPERT WITNESS
ANYA VERKHOVSKAYA AND TO BAR HER FROM TESTIFYING**

Vivint, Inc., by its counsel Thomas J. Cunningham, Martin W. Jaszczuk and Bruce E. Reinhart, hereby moves to strike and exclude the affidavit setting forth the opinions and conclusions of Plaintiff's proposed expert witness, Anya Verkhovskaya, and to bar her from testifying.

In support of his motion for class certification, Benzion relies on the proposed expert opinion testimony of Anya Verkhovskaya.  (Dkt. 119 Ex. 7, attached to this Motion as Exhibit 1 for convenience and referred to hereafter as "Verkhovskaya Aff.")).  The Vekhovskaya affidavit should be stricken, and her testimony should be barred for several reasons.

Verkhovskaya's affidavit and testimony is (1) not based on sufficient facts and data to be reliable, (2) is not the product of a "reliable principle or method" that meets the *Daubert* standard and could not be tested or verified by an independent rebuttal expert, and (3) is not testimony based on work that requires any special knowledge, skill, experience, training or education.

Rule 702 of the Federal Rules of Evidence provides that a witness "qualified as an expert by knowledge, skill, experience, training or education" may offer opinion testimony provided that:

1. "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;"
2. "the testimony is based on sufficient facts or data;"
3. "the testimony is the product of reliable principles and methods;" and
4. "the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702.

Under Rule 702, the district court serves "as a gatekeeper to keep out irrelevant or unreliable expert testimony." *U.S. v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993).  This gatekeeping function under *Daubert* "'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis in original).  "The primary purpose of a *Daubert* inquiry is to ensure that the expert, 'whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *In re Trasylol Products Liability Litigation-MDL-1928*, No. 08-MD-1928, 2013 WL 3353833, at * 5 (S.D. Fla. July 03, 2013) quoting *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010).

The Eleventh Circuit has established a three-part test to determine the admissibility of expert testimony under Rule 702.  Specifically, trial courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260.  The burden of establishing the proposed expert's qualification, reliability, and helpfulness rests on the proponent of the expert opinion.  *Id.* at 1261.

In the context of proposed expert testimony in support of a motion for class certification, trial courts are required to "make the necessary factual and legal inquiries and decide all relevant contested issues prior to certification."  *Sher v. Raytheon Co.*, 419 Fed. Appx. 887, 890-91 (11th Cir. 2011) (holding that the district court "erred in granting class certification prematurely" when the district court failed to conduct a "*Daubert*-like critique" of the proffered expert testimony).  This requirement is not surprising given that "[t]he importance of *Daubert's* gatekeeping requirement cannot be overstated."  *Frazier*, 387 F.3d at 1260.  Accordingly, this Court should determine the admissibility of Verkhovskaya's testimony prior to determining whether to grant class certification.

I.  **VERKHOVSKAYA'S AFFIDAVIT AND TESTIMONY SHOULD BE STRICKEN AND BARRED BECAUSE THEY LACK FOUNDATION, ARE NOT RELIABLE, NOT RELEVANT AND THE WORK THEY ARE BASED UPON DOES NOT REQUIRE ANY EXPERTISE.**

Anya Verkhovskaya's affidavit has been offered by Benzion in support of his motion for class certification to support his argument that his proposed classes are ascertainable and meet the numerosity requirement of Federal Rule of Civil Procedure 23(a).  (Dkt. 119 at 7-8; Ex. 7).  Verkhovskaya was provided a sample of 25 spreadsheets produced by a company called Five9, Inc. that she refers to as the "Source Data."  (Verkhovskaya Aff. at ¶ 22; See copy of Five9

3

Subpoena and response, attached to this Motion as Exhibit 2).[1]  Verkhovskaya did three things with those spreadsheets:

1. She combined the 25 spreadsheets into a single spreadsheet;

2. She sorted column "K" of the resulting combined spreadsheet alphabetically, to isolate any records in the spreadsheet associated with a "campaign" that had the name "Vivint" or "Blue Dolphin" associated with it (and searched the spreadsheet using those terms, to ensure she identified all such records), de-duplicated the records, and determined which telephone numbers appeared more than once in a 12 month period;

3. She took the records resulting from her search and delivered them to a third-party, Nexxa Group, Inc. ("Nexxa"), and asked Nexxa to tell her how many of those numbers were cellular telephone numbers on the dates associated with each record, and which of the telephone numbers were registered with the national "Do Not Call" registry (the "DNC Registry") as of the date associated with each record.

(Verkhovskaya Aff. at ¶¶ 24, 34, 37; Verkhovskaya Dep. at 8-13, 38-39, 48-51, 54-55, 58-59, 88-89, 123 (the transcript from the deposition of Anya Verkhovskaya is attached to this Motion as Exhibit 3).  In addition, Verkhovskaya indicated in both her affidavit and at her deposition that she could load the data from the spreadsheets into a proprietary database her company, AB Data, has created.  (Verkhovskaya Aff. at ¶ 28; Verkhovskaya Dep. at 6-7, 103-104).  One component of that database is a connection to the National Change of Address (the "NCOA") database

---

[1] Five9 responded to Plaintiff's subpoena on May 17, 2013 with a letter and information contained in Exhibit 2.  In addition, Five9 produced 87 spreadsheets total, 25 of which were provided to Verkhovskaya.  (Verkhovskaya Aff. at ¶ 22; Verkhovskaya Dep. at 23-26).

maintained by the U.S. Postal Service, and her proprietary database would check the Source Data against the NCOA to confirm accuracy of the records.  (Verkhovskaya Dep. at 115-116).

The problem with Verkhovskaya's affidavit and proposed testimony is that it is completely lacking in foundation.  It is not "based upon sufficient facts or data."  Fed. R. Evid. 702.  The output is also not helpful or useful, as it cannot distinguish between the user of a cell phone (such as Plaintiff Matthew Benzion) and the subscriber for the cell phone service (in this case, Benzion's mother, Pamela Brooks).  In addition, Verkhovskaya's work consisted merely of:  (1) manipulation of an Excel spreadsheet; and (2) hiring a third-party to check the data in the spreadsheet against "fourth"-party databases.  Finally, Verkhovskaya's work did not call for any special "knowledge, skill, experience, training, or education."  *Id*.

        A.        **Verkhovskaya's Testimony Is Not Based Upon Sufficient Facts or Data.**

Verkhovskaya's work is based entirely on the 25 spreadsheets she was provided by Plaintiff's counsel, which she refers to in her affidavit as "call log files" or the "Source Data." (Verkhovskaya Aff. at ¶¶ 22-23).  But there is no evidence to indicate what the Source Data is, much less any evidence regarding who prepared it, how it was made or kept, or what assurances of trustworthiness or reliability there are for that data.  (Verkhovskaya Dep. at 43-47). Verkhovskaya admits that she has no knowledge regarding, among other things, what system made or kept the records, who made the records, when the records were made, how the records were made, how the records were kept, what the records represent, or if the records are accurate. (Verkhovskaya Dep. at 43-47, 59-60).  The lack of any foundation whatsoever for the Source Data renders Verkhovskaya's conclusions based on that information inadmissible pursuant to Rule 702.  There is absolutely no basis to conclude that the Source Data constitutes "sufficient facts or data" as required by Rule 702.

This Court should strike Verkhovskaya's affidavit and bar her from testifying. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) ("It is true that relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2nd Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."). While the evidence on which she bases her opinions and conclusions need not necessarily be admissible, it must at least be supported by a sufficient foundation to render the resulting work reliable. Here there is no foundation whatsoever for the Source Data. Conclusions based upon that Source Data are therefore not based on sufficient facts or data as required by Rule 702.

### B. Verkhovskaya's Work Is Not Reliable and Cannot Be Verified by a Rebuttal Expert.

Even if there were some basis on which the Court could conclude that the Source Data was accurate, Verkhovskaya's testimony would still need to be excluded because: (1) neither she nor her firm actually performed the work on the Source Data; and (2) neither the work performed by AB Data's subcontractor, Nexxa, nor the work that Verkhovskaya says she could do in the future can be tested or checked by a rebuttal expert, because it relies upon the use of proprietary databases and systems not available to anyone but AB Data and Nexxa.

#### 1. Verkhovskaya subcontracted the core of her work to Nexxa, who has not been disclosed as an expert in this case.

Verkhovskaya testified that one of the main things she was retained to do was to determine which telephone numbers in the Source Data were cell phone numbers and which of those numbers were on the DNC Registry. (Verkhovskaya Dep. at 10, 38-39). But neither

6

Verkhovskaya nor AB Data actually performed that analysis.  Instead, that work was performed by a different party – Nexxa.[2]  (Verkhovskaya Dep. at 10-13, 88-94).  Verkhovskaya does not know who at Nexxa performed this work.  (*Id.*).  She has no personal knowledge of what Nexxa did or how Nexxa did its work.  (*Id.*).  When asked about the process used by Nexxa to perform its work, she testified:  "I do not have first-hand knowledge of it.  I rely on their reputation." (Verkhovskaya Dep. at 92).  She testified that she relied on Nexxa's marketing materials to conclude that Nexxa was a reputable company that employed reliable methods.  (Verkhovskaya Dep. at 91-94).  But she wasn't sure exactly where Nexxa gets its information.  (Verkhovskaya Dep. at 91 ("It comes from a variety of public and proprietary data sources, but mainly from 411 directory assistance data source.")).  And her knowledge in that regard was drawn from Nexxa's marketing materials.[3]  (Verkhovskaya Dep. at 91).

Simply put, the work Verkhovskaya reports in her affidavit – which numbers from the Source Data are cell phone numbers and which of them were on the DNC Registry as of the date associated with each record – wasn't performed by Verkhovskaya.  It was performed by Nexxa, and there is no foundation for the reliability of Nexxa's work.  No one with first-hand knowledge of Nexxa's work has been disclosed as an expert in this lawsuit.

---

[2]  Verkhovskaya's affidavit incorrectly states that "AB Data cross-referenced the Source Data telephone numbers with a database of cellular telephone numbers maintained by the third-party vendor Nexxa Group, Inc." (Verkhovskaya Aff. at ¶ 24).  In fact, Verkhovskaya testified that AB Data simply provided the Source Data to Nexxa and some unknown person at Nexxa cross-referenced that data – no one from AB Data was involved in that process beyond supplying the data to Nexxa, and Verkhovskaya has no personal knowledge of what databases Nexxa used to perform its work.  (Verkhovskaya Dep. at 10-13, 88-94).

[3]  Verkhovskaya's affidavit is clearly incorrect when it states that it is based on Verkhovskaya's personal knowledge.  (Verkhovskaya Aff. at ¶ 7).  Throughout her deposition she repeatedly indicated she did *not* have personal knowledge of the information in her affidavit and was relying on others, including third-parties such as Nexxa, for the information she was testifying about.

> **2.      Both Verkhovskaya and Nexxa rely on proprietary databases not available to anyone else and therefore not "testable" by Vivint's rebuttal experts.**

The use of "proprietary" databases not available to Vivint also renders Verkhovskaya's testimony inadmissible.  One of the factors that *Daubert* instructs courts to consider in determining whether expert testimony should be admitted is "whether the expert's theory can be and has been tested."  *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (citing *Daubert*, 509 U.S. at 593–94).  Being able to test an expert's opinions is important because it helps ensure that the expert's opinions are accurate.  *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate **must be testable**.") (emphasis added).

Here, Verkhovskaya's methodology cannot be tested and is therefore unreliable under *Daubert* and Rule 702.  Verkhovskaya testified that the reports she generated and the methodology that she used cannot be tested, verified or reproduced by anyone other than AB Data.  (Verkhovskaya Dep. at 7, 65, 103-105).  Moreover, much of Verkhovskaya's testimony is about data analysis that she has not even performed yet, but says she is capable of performing in the future.  (*See, e.g.*, Verkhovskaya Aff. at ¶ 29 ("The Records Database will produce either a 'hit' or 'no-hit' for each of the telephone numbers."); Verkhovskaya Dep. at 104 ("The database is created.  However, it does not have the data.")).  It is axiomatic that this non-existent data analysis cannot be tested or verified.  Because it is impossible to test Verkhovskaya's methodology to verify whether it is accurate, her affidavit should be stricken as unreliable and she should be barred from testifying in this matter.  *See Sumner v. Biomet, Inc.*, 434 Fed. Appx. 834, 842-43 (11th Cir. 2011) (affirming district court's exclusion of testimony as unreliable

under *Daubert* and Rule 702 where purported expert's opinion "is virtually incapable of being tested"). *Marsh v. W.R. Grace & Co.*, 80 Fed. Appx. 883, 886 (4th Cir. 2003) (purported expert's opinion was "unreliable because it cannot be tested or verified consistently").

In addition, because the core of Verkhovskaya's conclusions are based upon work by Nexxa and not by Verkhovskaya or AB Data, the inability to test Nexxa's work renders Verkhovskaya's testimony inadmissible. Nexxa uses "proprietary" databases not available to anyone else, so there would be no way for Vivint's rebuttal experts to double check Nexxa's work. (Verkhovskaya Dep. at 91-92). Her testimony therefore fails to satisfy the requirements of *Daubert*. *Zenith Electronics*, 395 F.3d at 419 ("Someone else using the same data and methods must be able to replicate the result.").

### C. Verkhovskaya's Testimony Is Not Relevant Because It Cannot Distinguish Between the Users of Cell Phones and Subscribers For Cell Phone Service.

Verkhovskaya's testimony must also be excluded because (1) it is unclear what the names in that Source Data represent, and (2) Verkhovskaya has no way of differentiating between the users of cell phones and subscribers for cell phone service, assuming the names in the Source Data bear some relationship to calls reflected in that data. (Verkhovskaya Dep. at 109-110).

Under the TCPA, it is possible that the person with a claim to relief for a violation of the statute may be the subscriber for the cellular phone service related to the calls in issue. *See, e.g.*, *Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 3872171, *4 (N.D. Ill. July 29, 2013) (citing *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 643 (7th Cir. 2012)); *Gutierrez v. Barclays Group*, No. 10-1012, 2011 WL 579238, *4-5 (S.D. Cal. Feb. 9, 2011). It is also possible that the person with the claim to relief is the actual user of the phone, if the phone is carried by someone other than the subscriber. *See, e.g.*, *Page v. Regions Bank*, 917 F. Supp. 2d

9

1214, 1219 (N.D. Ala. 2012); *D.G. ex rel Tang v. Siegel*, 791 F. Supp. 2d 622, 625 (N.D.Ill. 2011). *See also Jordan v. ER Solutions, Inc.*, 900 F. Supp. 2d 1323, 1326 (S.D. Fla. 2012) ("This raises a sticky issue of whether the spouse of a subscriber to a phone plan can make out a claim and the law is not entirely clear on the issue."). For example, often cellular phone service is provided on a "family plan," where one family member is the subscriber but various other family members actually use the phones to which the numbers under that plan are associated. Often employers provide employees with cell phones. The employer is the subscriber; the employee is the user. If the subscriber and the user are different people, only one can recover for a single violation of the TCPA.

Benzion's own circumstances illustrate the point. Benzion's mother, Pamela Brooks, is the subscriber for the cellular service associated with the phone he uses and on which he received all of the calls at issue in this case. (Benzion Dep. at 67).[4] Benzion, not Brooks, is the party with the claim for relief in this case. In other cases – perhaps a case involving a parent who provides a *minor* child with a phone, or a case in which there are substantial *actual damages* claimed by a corporate subscriber who provided thousands of phones to its employees – the subscriber, not the user, might be the party with the proper claim to relief. The fact that this issue exists is itself one of the reasons a class cannot be certified in this case, as Vivint argues at pages 13-15 and 36-37 of its proposed Response in Opposition to Plaintiff's Motion for Class Certification.[5] But even if this issue did not preclude certification, Benzion would need to have some way of ascertaining who the users of cell phones are as distinguished from the subscribers. Verkhovskaya admits

---

[4] An excerpt from the Deposition of Matthew Benzion is attached to this Motion as Exhibit 4.

[5] Vivint is filing a separate Motion For Leave To File Brief In Excess Of Page Limit In Opposition To Plaintiff's Motion For Class Certification And To File Separate Statement Of Facts In Support simultaneously with this Motion. Vivint's proposed Response in Opposition to Plaintiff's Motion For Class Certification is attached to that Motion.

that her work does not account for such distinctions, and she is unaware of any way to do it. Plaintiff's other proffered expert, Randall Snyder, testified that this would be "impossible." (Snyder Dep. at 59 (an excerpt of the transcript from the deposition of Randall Snyder is attached to this Motion as Exhibit 5)).

Verkhovskaya does not know, and the Plaintiffs have no evidence to show, what the names in the Source Data represent. (Verkhovskaya Dep. at 80-81). It is unclear whether those are the names of subscribers to the phone service for the calls listed in the Source Data (assuming, in fact, that the Source Data reflects records of phone calls), the names of the users of the phones involved, the names of individuals who provided consent to call the numbers listed, some combination of those three or something else. Verkhovskaya's work does not help the Court or the parties with key issues related to the motion for class certification, such as whether the class is ascertainable or numerous.

> **D.   Verkhovskaya's work did not call for any specialized knowledge, skill, experience, training or education.**

Verkhovskaya did nothing more than combine 25 spreadsheets into one, sort it, and send the output to a "fourth"-party to check the results against a database of cell phone numbers and the DNC Registry. (Verkhovskaya Dep. at 11-12; 49-50; 84-86). That work did not require any "scientific, technical, or other specialized knowledge," as required by Rule 702. Perhaps the work peformed by Nexxa would meet that standard. But no one from Nexxa is offered as an expert in this case, and Verkhovskaya has no first-hand knowledge of what Nexxa did. (Verkhovskaya Dep. at 92). Simply hiring Nexxa to check the Source Data against Nexxa's proprietary databases does not make Verkhovskaya an expert. Because Verkhovskaya's work does not involve "scientific, technical, or other specialized knowledge," her testimony fails to satisfy the requirements of Rule 702 and should be stricken on that basis.

Verkhovskaya is being offered as an expert witness to support Plaintiff's contested motion for class certification. Notably, Verkhovskaya has no experience testifying in this capacity. (Verkhovskaya Dep. at 87-88, 131-132). Moreover, Verkhovskaya has never offered expert testimony at *any* trial or evidentiary hearing and has never been qualified by any court as an expert witness in connection with a contested motion for class certification. (Verkhovskaya Dep. at 132). Nor does Verkhovskaya have any of the other traditional hallmarks of an expert witness: she no formal training in the area of her purported expertise, has never taken or taught any relevant classes, has never authored any relevant publications, and is not a member of any relevant professional organization. (Verkhovskaya Dep. at 133-134, 135-137). In fact, Verkhovskaya admits that her qualifications to offer expert testimony in this case are solely based on her experience working at AB Data in the area of class action administration. (Verkhovskaya Dep. at 133-134, 135-137).

## II.   CONCLUSION

The testimony of Anya Verkhovskaya falls well short of the requirements for admissibility of expert testimony. Verkhovskaya fails to base her opinions on "sufficient facts or data" as required by Rule 702. Verkhovskaya's affidavit is also awash with wholly irrelevant information regarding her company's ability to serve as a claims administrator in this matter. This Court should strike and exclude the testimony of Verkhovskaya and bar her from testifying in this matter.

### **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**

Counsel for Vivint hereby certifies that they conferred with Plaintiff's counsel in a good faith effort to resolve by agreement the issues raised in this motion prior to filing the motion. However, the parties were unable to resolve the issues raised herein.

Dated: November 27, 2013

/s/ Bruce E. Reinhart_____
Bruce E. Reinhart
Florida Bar No. 0010762
Flagler Center Tower
505 South Flagler Drive, Suite 300
West Palm Beach, Florida 33401
Phone:  561-472-2970
*breinhart@mcdonaldhopkins.com*

Thomas J. Cunningham  (*pro hac vice*)
Martin W. Jaszczuk  (*pro hac vice*)
111 South Wacker Drive
Chicago, Illinois  60606
Phone:  312-443-0610
*tcunningham@lockelord.com*
*mjaszczuk@lockelord.com*

*Attorneys for Defendant Vivint, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of November, 2013, I filed **VIVINT, INC.'S MOTION TO STRIKE AND EXCLUDE THE OPINIONS OF PLAINTIFF'S PROPOSED EXPERT WITNESS ANYA VERKHOVSKAYA AND TO BAR HER FROM TESTIFYING** with the Clerk of the Court, using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

| | |
|---|---|
| Scott D. Owens<br>SCOTT D. OWENS, P.A.<br>664 East Hallandale Beach Boulevard<br>Hallandale, FL  33009<br>*scott@scottdowens.com* | Alexander H. Burke<br>BURKE LAW OFFICES, LLC<br>155 North Michigan Avenue, Suite 9020<br>Chicago, IL  60601<br>*aburke@burkelawllc.com* |
| Daniel J. Marovitch<br>MAROVITCH LAW FIRM, LLC<br>233 South Wacker Drive, 84th Floor<br>Chicago, IL  60606<br>*dmarovitch@marovitchlaw.com* | Edward A Broderick<br>Anthony Paronich<br>BRODERICK LAW, PC<br>125 Summer Street, Suite 1030<br>Boston, MA 01760<br>*ted@broderick-law.com*<br>*anthony@broderick-law.com* |
| Matthew McCue<br>THE LAW OFFICE OF MATTHEW P. MCCUE<br>1 South Avenue, Suite 3<br>Natick, MA 01760<br>*mmccue@massattorneys.net* | |

                                                                     /s/ Bruce E. Reinhart

                                              *One of the Attorneys for Defendant Vivint, Inc.*