IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.  0:12-CV-61826-WJZ

**MATTHEW BENZION, individually and
on behalf of others similarly situated,**

    **Plaintiff,**

vs.

**VIVINT, INC., a Utah corporation,**

    **Defendant.**

_____/

**VIVINT, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND
EXCLUDE THE AFFIDAVIT OF PLAINTIFF'S PROPOSED EXPERT
WITNESS RANDALL A. SNYDER AND TO BAR HIM FROM TESTIFYING**

    Vivint, Inc., by its counsel Thomas J. Cunningham, Martin W. Jaszczuk and Bruce E. Reinhart, hereby files its reply in support of its motion to strike and exclude the affidavit setting forth the opinions and conclusions of Plaintiff's proposed expert witness, Randall A. Snyder, and to bar him from testifying.  (Dkt. 144).

    Benzion's response (Dkt. 165) makes it clear that he is offering Snyder for "one key opinion in this case—that the phone calls to the putative class members were made using equipment that dialed their numbers without human intervention, from a list of stored numbers."[1] (Dkt. 165 at 7).  Snyder did not actually inspect the Five9, Inc. equipment or system.  He did not inspect the equipment used by DirectAccess Corporation, the company that purportedly used the Five9 equipment or system.  He did not review any testimony by any witness from Five9 or DirectAccess.  He did Google it, however, and watched a video on YouTube.  He does not and cannot testify that the system(s) that he read about in the articles he found from his Google

---

[1] Benzion's response does not even attempt to defend Snyder's non-sequitur, one-paragraph "opinion" that the proposed class can be ascertained and identified.  As a result, this reply will not address that issue.

search or the video for which he watched on YouTube was actually the same version or even the same Five9 system DirectAccess used. He cannot offer that testimony because it does not exist.

The only other basis for Snyder's testimony is the testimony of Jody Rookstool—testimony completely lacking in foundation. (Dkt. 165 at 8). Rookstool does not work for Five9 or DirectAccess. He has no personal knowledge of the Five9 system nor how that system was configured or used by DirectAccess. The *only* testimony relied upon by Snyder to form his opinion is both unreliable due to its lack of foundation and inadmissible.

Even setting aside the glaring issues with the reliability of the evidence that forms the basis for his improper legal opinions, Snyder admits that Five9's system has different settings, including one that would require human intervention (thus excluding it from the definition of an ATDS), and that he does not know how the system was configured to make the calls at issue in this case. As a result, Snyder has absolutely no basis on which to reach the "key opinion" for which Benzion offers him.

Snyder's testimony should be stricken and he should be barred from testifying for the additional reason that his opinions constitute improper legal conclusions. Indeed, Snyder not only defines what the TCPA prohibits in his affidavit, he applies his version of the facts of this case to the law.

For the reasons set forth herein, as well as those in Vivint's Motion, this Court should strike and exclude the testimony of Snyder and bar him from testifying in this matter.

I. **SNYDER ADMITS HE CANNOT REACH THE OPINION FOR WHICH HE IS OFFERED, AND HIS OPINIONS ARE NOT BASED ON SUFFICIENT FACTS OR DATA AND CONSTITUTE IMPROPER LEGAL CONCLUSIONS IN ANY EVENT.**

   A. **Snyder Admits That He Does Not Know How the Calls Were Made That Are At Issue in This Case.**

Snyder's deposition testimony directly contradicts the key opinion for which he is proffered as an expert. Specifically, Snyder admits that (i) Five9's system can be configured and customized for a particular customer; (ii) one of the configurations can require human intervention; and (iii) he does not know how the system was configured when the calls were made that are at issue in this case. (Snyder Dep. at 36-38, 86-90) ("Q. Do you know how this system was customized to make the calls at issue here? A. No."). Because he does not know how the Five9 system was configured when the calls at issue in this case were placed, he

necessarily cannot opine that such calls were made without human intervention, from a list of stored numbers.

If the system was configured to require human intervention to make the subject calls—which Snyder testifies is possible—it would not constitute an ATDS. (Snyder Dep. at 89); *see* 47 U.S.C. § 227(b)(1)(A)(iii); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 566 (Jan. 4, 2008); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14092 (July 3, 2003); *Gragg v. Orange Cab Co., Inc.*, No. C12-0576RSL, 2013 WL 195466, *2 (W.D. Wash. Jan. 17, 2013). But as set forth above, Snyder has no reason to believe it was or was not so configured in this case. Snyder admits that not every "autodialer" is an ATDS and that he would need more information and facts about a particular system to know whether it is an ATDS. (Snyder Dep. at 32-35). Consequently, the opinions in Snyder's affidavit regarding how calls were actually made in this case are flatly defeated by his deposition testimony that he does not know how the calls at issue in this case were made. His testimony should therefore be stricken and he should be barred from testifying.

### B.  Snyder's Opinions Are Not Based On Sufficient Facts or Data.

Snyder's opinions should also be stricken because they are not based on any evidence in the record or "sufficient facts or data" as required by Rule 702. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (". . . a trial court may exclude expert testimony … whose factual basis is not adequately explained."); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."). As Snyder testified to at his deposition, he based the opinions in his affidavit on his review of the Five9 website and some Google searches. (Snyder Dep. at 8-9, 14-17, 26). Notably, Snyder did not physically inspect the actual equipment (used by DirectAccess to make calls) or software (provided by Five9) about which he is opining, nor did he rely on the testimony of any employee of Five9 or DirectAccess—the only parties that would have personal knowledge of the systems configuration and settings for the calls at issue in this case. (Snyder Aff. at ¶ 4; Snyder Dep. at 8-9, 14-17, 26, 81-85, 93).

Benzion argues that the system utilizes an Internet connection and therefore there is nothing to "inspect." But how a client like DirectAccess accessed the system is not material.

3

Snyder would need to know what version of the Five9 system DirectAccess was using, for what time period, and how that system had been configured for DirectAccess.  That information might be obtained from a witness at either Five9 or DirectAccess.  But in this case it simply has not been obtained, so no one—including Mr. Snyder—knows.  Once it has been determined exactly what system was used, how it was configured, whether it changed over time, and for what time period it was used, Mr. Snyder might have reviewed manuals or training materials or other documentation about the system to understand how it was used by DirectAccess and whether—under those facts—that system was capable of generating numbers to be called randomly or sequentially without human intervention.

The key problem with Snyder's testimony is that Benzion has not taken the deposition of anyone at Five9 or DirectAccess.  Without that information, there is nothing to tie Snyder's Internet research regarding Five9's system and its capabilities generally with the actual systems and settings used to make the calls at issue in this case specifically.  Consequently, Snyder's conclusions are based on assumptions that there is no support for and certainly do not rise to the level of "sufficient facts or data" required by Rule 702.

Benzion's attempt to bolster the YouTube-and-Google-based foundation for Snyder's opinions completely misses the mark.  As an initial matter, Benzion lists things that Snyder *reviewed*, not what Snyder *relied upon* in forming his opinions.  Moreover, none of the nine additional items that Benzion enumerates constitute reliable evidence regarding whether the actual calls at issue in this case were made using an ATDS. (Resp., p. 8).  Most of the items are not even *evidence* at all:  (i) Plaintiff's First Amended Complaint; (ii) Vivint's Motion to Dismiss Plaintiff's Second Amended Complaint; (iii) Affidavit of Anya Verkhovskaya; (iv) the TCPA and regulations promulgated thereunder; and (v) FCC Report and Orders dated July 3, 2003 and February 15, 2012.  These items simply cannot form the basis for Snyder's opinion that DirectAccess utilized an ATDS to make the calls at issue in this case.[2]

Benzion also lists the MP3 recording of a call between himself and Vivint as another piece of evidence supporting Snyder's opinion that DirectAccess used an ATDS to place that call.  Surely Benzion is not suggesting that Snyder can discern the manner in which a call was

---

[2] Snyder offers no opinions about the equipment used to make the calls at issue in this case placed by CallAssistant and ROI Solutions.  There is no evidence in the record related to the equipment and systems used by these call centers.

4

made by listening to a recording of the call. If he is making that preposterous claim, it is not clear from his response, which merely lists the recording as one of the things—in addition to his Google and YouTube searches—that Snyder considered in reaching his conclusion that an ATDS was used.

The remaining items on Plaintiff's list are the deposition transcripts of Jesse Leishman, Michael Guardabasco and Jody Rookstool. Any reliance on the Leishman deposition for the assumptions Snyder makes is misplaced. (Snyder Dep. at 8-10, 16, 21, 91-92). As set forth in the motion (Dkt. 144), Leishman testified about *Vivint's* use of Five9; his testimony had nothing to do with how DirectAccess, or any party other than Vivint, used Five9. In other words, Leishman has no knowledge regarding how the calls at issue in this case were made. Snyder seemed confused at his deposition—it does not appear that he understands that both Vivint and DirectAccess use Five9 systems to make calls, but the relevant calls here are those made by DirectAccess, not those made by Vivint.[3]

Similarly, Michael Guardabasco merely testified that he had "heard of" Five9 and that he did not have access to any information or data regarding Vivint's use of Five9. (Guardabasco Dep. at 73). He offers no other testimony about Five9. Thus, Benzion is clearly reaching to try to support Snyder's conclusions when he says Snyder reviewed and considered Guardabasco's

---

[3] This illustrates both the need for an evidentiary hearing to explain the evidence as well as yet another reason a class cannot be maintained in this case. Calls were placed in the first instance by the call centers: DirectAccess, CallAssistant, and ROI Solutions. Whether consent existed for those calls is one question. When individuals expressed interest in home alarm systems were then called back by Vivint salespersons, those second calls involve a secondary question of consent. In other words, it is entirely possible that any given individual did *not* consent to the first call (though Vivint believes they did), but *did* consent to the second call received from the Vivint salesperson. Further complicating this situation is that some people only received one call that was transferred to Vivint (such as Benzion's call). Others received only a call from the call center and were neither transferred to Vivint nor received any call from Vivint. That might have occurred because they expressed no interest in home alarm service or because they expressed interest but the lead became "stale" and Vivint never followed up on it. To make the issues even more complicated, both Vivint *and* DirectAccess used Five9 systems to make calls. Thus, when looking at documents produced by Five9 one of the first questions that must be asked is whether those records relate to calling activity of Vivint or DirectAccess. Snyder did not seem to understand or appreciate these factual nuances. Certainly anything Leishman said about Five9 related to *Vivint's* use of Five9, not *DirectAccess's* use of Five9. Leishman had never even heard of DirectAccess prior to this lawsuit.

5

testimony in reaching his conclusion that DirectAccess used an ATDS to make the calls at issue in this case.

While Jody Rookstool offered some testimony about how DirectAccess made its calls, he frankly has no foundation to offer this testimony. Rookstool's testimony is not admissible and is not sufficiently reliable to support an expert opinion given that he has no actual knowledge of how DirectAccess made calls. Rookstool admits that (i) his companies and DirectAccess were separate and distinct companies; (ii) there was no joint ownership between his companies and DirectAccess; and (iii) there was no overlap between any of his officers and employees and the officers and employees of DirectAccess. (Rookstool Dep. at 96-98). Rookstool did not testify that he had any familiarity with the systems used by DirectAccess to make the calls at issue in this case.[4] Stated differently, Benzion does not and cannot provide this Court with any credible foundation for Rookstool's testimony about DirectAccess's use of Five9. To make matters worse, Benzion opposes Vivint's request for an evidentiary hearing, where Vivint would be able to cross-examine Rookstool about the foundation for his testimony. (Dkt. 163).

As explained herein and in Vivint's motion, Snyder's opinions are not based on "sufficient facts or data" and are more accurately characterized as speculation and conjecture. Snyder's testimony should therefore be stricken, and he should be barred from testifying. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) ("It is true that relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."); *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) ("*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury."); *Powers v. Lazy Days' R.V. Center, Inc.*, No. 05-cv-1542, 2007 WL 1064215, at * 3 (M.D. Fla. Apr. 04, 2007) (finding expert's opinion inadmissible where "expert's testimony lack[ed]

---

[4] Perhaps Rookstool's testimony was based on something someone else told him – maybe it is hearsay. And perhaps even though his testimony is hearsay and inadmissible, the Court would hear it in connection with a motion for class certification regardless. Even if that were all the case, Vivint should have an opportunity to cross-examine Rookstool on this point, since Benzion is apparently relying solely on that testimony (together with the Google and YouTube searches) to support his expert's opinion that an ATDS was used to make the calls to class members in this case. This is another reason an evidentiary hearing is required in this case – so Benzion can call witnesses like Mr. Rookstool and elicit the testimony he believes support his positions and Vivint can cross-examine those witnesses.

sufficient facts and data because he failed to show how he arrived at his opinion…"); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742, n.6 (7th Cir.1998) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.).

### C. Snyder Offers Improper Legal Opinions.

Snyder's testimony should be stricken for the additional reason that it constitutes improper legal conclusions and argument. Benzion's response to this argument is that Snyder's testimony "does not opine as to whether Defendant violated the TCPA." (Resp., p. 10). While it is true that Snyder does not *expressly* opine that Vivint violated the TCPA, he still improperly defines the law and then applies his version of the facts to that law that he defined. Just because he stopped one step short of actually stating that Vivint violated the TCPA does not salvage his improper legal opinions.

Appropriate expert testimony in the context for which Snyder is offered would be that the expert reviewed reliable facts and data about the actual Five9 system used by DirectAccess, including the settings and configurations of the system when the calls at issue were made. The expert would then opine that the dialing system has certain attributes, such as whether it was capable of generating and dialing random or sequential numbers and whether there was any human intervention. It would then be up to the lawyers to offer authority to define an ATDS under the TCPA and argue that the attributes set forth by the expert satisfy that definition.

That is not what Benzion or Snyder did here. Instead, Snyder opines as to the legal definition of an ATDS under the TCPA and its interpreting regulations:

- "Predictive dialing is a type of automatic telephone dialing as defined by the FCC…" (Snyder Aff. at ¶ 14).
- "Furthermore, the FCC has held that prohibitions under the TCPA apply to lists of telephone numbers as well as random or sequentially generated numbers…" (*Id.* at ¶ 17).
- "The FCC has determined that predictive dialers are automatic telephone dialing systems subject to the TCPA's restrictions on the use of autodialers." (*Id.* at ¶ 23).

Given the foregoing, Benzion's attempt to couch Snyder's testimony as merely making a "reference to the TCPA and FCC regulations" strains credulity. (Resp., p. 11).

Snyder's attempts to define an ATDS under the TCPA is improper, as it is this Court's province to define legal terms. *See*, *e.g.*, *Dubiel v. Columbia Hosp. (Palm Beaches) Ltd.*

*Partnership*, No. 04-80283-CIV, 2005 WL 5955691, at *3 (S.D. Fla. Jan. 11, 2005) (expert testimony is not permitted if it usurps "the role of the trial judge in instructing the jury as to the applicable law"); s*ee also Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses, to define legal terms. The expert's testimony in this regard invaded the province of the court."); *U.S. v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[W]hen a witness gives an opinion about the meaning of a specialized legal term, the witness is giving a legal conclusion that is better handled by the judge and, coming from the witness, will be of little assistance to the jury."); *U.S. v. Scop*, 846 F.2d 135, 140 (2nd Cir. 1988) (expert's opinions that "drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud' ... were legal conclusions that were highly prejudicial and went well beyond his province as an expert in securities trading").

Not only does Snyder attempt to define what constitutes an ATDS under the TCPA, he then goes even further and applies his (factually baseless) conclusions about the system at issue here to his legal definition of an ATDS:

- "[I]t is my expert opinion that cellular telephone calls made from Vivint to the Plaintiff were made using an ATDS as defined within the TCPA and additional regulations promulgated thereunder."  (Snyder Aff. at ¶ 9).
- "Therefore, I conclude that the equipment used on behalf of Vivint, and provided as a service by Five9, fulfills the definitions of an ATDS within the TCPA."  (*Id.* at ¶ 25).
- "[T]he equipment used to make telephone calls… was an 'automatic telephone dialing system' or ATDS, as that term is defined in the TCPA and accompanying regulations." (*Id.* at ¶ 27).

This is also improper because it is the trier of fact's role to apply the facts of the case to the law. *Dubiel*, 2005 WL 5955691, at * 3 (an expert may not usurp "the role of the jury in applying that law to the facts before it") (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991)); *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979) ("[A]n expert witness cannot state legal conclusions by applying law to the facts.").

Benzion's reliance on the district court's opinion in *Smith v. Microsoft, Corp.* case is entirely unavailing.  The nature of Snyder's opinions in the two cases is readily distinguishable. In fact, the only similarities between the two cases are that Snyder is being offered as an expert in a TCPA case and the other side objected and moved to strike.  In *Smith*, Snyder testified

8

regarding opt-in consent, whereas he testifies as to whether the calls were made by an ATDS here. *Smith v. Microsoft, Corp.*, No. 11-cv-1958, 2013 WL 6497073, at *4 (S.D. Cal. Dec. 10, 2013). Moreover, the court in *Smith* noted that Snyder "merely discusses a case for which he served as an expert witness." *Id.* at * 5. That is not the case here, as Snyder does not merely reference a case—in fact, he does not reference any case in his affidavit. Rather, as set forth above, Snyder attempts to define what constitutes an ATDS under the TCPA and then apply his version of the facts to that definition. Indeed, the court's rationale in *Smith* supports Vivint's position, as the court provided that "[i]t is uncontested that Snyder is unqualified to analyze a Ninth Circuit case and state a legal conclusion by applying the facts of this case to his interpretation of the law." *Id.* That is exactly what Snyder attempts to do here.

Because Snyder seeks to usurp the role of the Court and the trier of fact by defining the law and applying the "facts" to his definition of the law, his testimony should be stricken and he should be barred from testifying. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence."); *Offill*, 666, F.3d at 175 ("[I]t does not help the jury for an expert to give testimony that 'states a legal standard or draws a legal conclusion by applying law to the facts,' because it 'supplies the jury with no information other than the witness's view of how the verdict should read.'") (internal citation omitted).

## II.   CONCLUSION

Snyder admits that he cannot offer the opinion that Benzion asks this Court to accept— "that the phone calls to the putative class members were made using equipment that dialed their numbers without human intervention, from a list of stored numbers."[5] Moreover, Snyder's testimony relies on woefully insufficient facts or data. Snyder's affidavit is replete with improper legal conclusions regarding the equipment and dialing systems of Five9 that is not

---

[5] Given that Snyder's testimony is confined to DirectAccess and that he does not address whether the same equipment and systems were used by CallAssistant and ROI Solutions, it is not entirely clear how Snyder's opinion helps Benzion's argument that common issues of fact predominate. If each call center used different equipment and systems, then the Court would need to consider which entity called which class member on which date and using which equipment. Even if Snyder's testimony were admitted, Benzion cannot overcome this fundamental problem with what he is attempting to do in this case.

based on any first-hand knowledge, but merely by unspecified Internet searches.  This Court should strike and exclude the testimony of Snyder and bar him from testifying in this matter.

Dated: December 26, 2013                    /s/ Bruce E. Reinhart_____
Bruce E. Reinhart
Florida Bar No. 0010762
Flagler Center Tower
505 South Flagler Drive, Suite 300
West Palm Beach, Florida 33401
Phone:  561-472-2970
*breinhart@mcdonaldhopkins.com*

Thomas J. Cunningham  (*pro hac vice*)
Martin W. Jaszczuk  (*pro hac vice*)
111 South Wacker Drive
Chicago, Illinois  60606
Phone:  312-443-0610
*tcunningham@lockelord.com*
*mjaszczuk@lockelord.com*

*Attorneys for Defendant Vivint, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of December, 2013, I filed **VIVINT, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE THE OPINIONS OF PLAINTIFF'S PROPOSED EXPERT WITNESS RANDALL A. SNYDER AND TO BAR HIM FROM TESTIFYING** with the Clerk of the Court, using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

| | |
|---|---|
| Scott D. Owens<br>SCOTT D. OWENS, P.A.<br>664 East Hallandale Beach Boulevard<br>Hallandale, FL  33009<br>*scott@scottdowens.com* | Alexander H. Burke<br>BURKE LAW OFFICES, LLC<br>155 North Michigan Avenue, Suite 9020<br>Chicago, IL  60601<br>*aburke@burkelawllc.com* |
| Daniel J. Marovitch<br>MAROVITCH LAW FIRM, LLC<br>233 South Wacker Drive, 84th Floor<br>Chicago, IL  60606<br>*dmarovitch@marovitchlaw.com* | Edward A Broderick<br>Anthony Paronich<br>BRODERICK LAW, PC<br>125 Summer Street, Suite 1030<br>Boston, MA  01760<br>*ted@broderick-law.com*<br>*anthony@broderick-law.com* |
| Matthew McCue<br>THE LAW OFFICE OF MATTHEW P. MCCUE<br>1 South Avenue, Suite 3<br>Natick, MA  01760<br>*mmccue@massattorneys.net* | |

                                                                     /s/ Bruce E. Reinhart

                                                *One of the Attorneys for Defendant Vivint, Inc.*