IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.  0:12-CV-61826-WJZ

**MATTHEW BENZION, individually and
on behalf of others similarly situated,**

    Plaintiff,

vs.

**VIVINT, INC., a Utah corporation,**

    Defendant.

_____/

**VIVINT, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND
EXCLUDE THE AFFIDAVIT OF PLAINTIFF'S PROPOSED EXPERT
WITNESS ANYA VERKHOVSKAYA AND TO BAR HER FROM TESTIFYING**

    Vivint, Inc., by its counsel Thomas J. Cunningham, Martin W. Jaszczuk and Bruce E. Reinhart, hereby files its reply in support of its motion to strike and exclude the affidavit setting forth the opinions and conclusions of Plaintiff Matthew Benzion's proposed expert witness, Anya Verkhovskaya, and to bar her from testifying.

    Benzion's response fails to adequately address the most glaring weakness of Anya Verkhovskaya's affidavit—that there is absolutely no basis for her testimony that the Five9 records she reviewed are related to calls made to generate leads for Vivint or that the records are sufficiently reliable to form the basis for expert testimony.  In order for Verkhovskaya's opinions to be admissible, the assumptions she makes must be supported by reliable evidence.   But Benzion has not taken the deposition of Five9, Inc., the company that produced the only documents on which Verkhovskaya's conclusions are based.  Benzion has not taken the deposition of anyone from DirectAccess Corporation, the company that the records purportedly relate.  Benzion cannot explain why these records appear to relate to Savantius, LLC, a company that has no relationship to the call received by Benzion in relation to Vivint.  Benzion simply has not done the foundational work necessary to permit his proposed expert to offer conclusions about whether a class can be ascertained in this case.

Benzion attempts to side-step this issue altogether by arguing that Verkhovskaya is not the witness that he is offering to provide the missing piece of the puzzle. (Dkt. 164 at 8). But Benzion does not identify who that witness might be. (See *id.*). In fact, there *is no such witness*. There are no facts in the record to establish any foundation for what the Source Data[1] purports to be or how or that it is reliable. This is hardly surprising given that Benzion has not taken the deposition of anyone from Five9 or DirectAccess—the only two entities that would have personal knowledge of those facts. Benzion's only argument is his repeated lament that this is all just so "straightforward." (*See, e.g.,* Dkt. 164 at 2). But simply arguing that the evidence must be what it appears to be and that it is so "straightforward" no one needs to explain it will not do. It is Benzion's obligation to show the Court all of the pieces of the puzzle and how they fit together – not just a few of them with a promise that he will somehow tie it all up later.

Verkhovskaya's testimony should be stricken on the additional basis that her methodology is unreliable and cannot be verified by a rebuttal expert. Benzion's response to this is that the proper way to challenge Verkhovskaya's conclusions is by cross-examination. The problem with Benzion's counterargument is that she did almost none of the work that led to her offered conclusions. Some unidentified employee(s) of third-party Nexxa Group performed the actual data analysis in this case, but no one from Nexxa has not been disclosed as an expert witness. Consequently, Vivint cannot cross-examine anyone regarding the processes and procedures followed by Nexxa.

The opinions offered by Verkhovskaya are also irrelevant, as she admittedly cannot distinguish between the user of a cell phone and the subscriber or financially responsible party. Benzion fails in his attempt to cast Vivint's argument as an irrelevant, disputed legal issue. It is immaterial whether this Court ultimately decides that the TCPA claim belongs to the user or the subscriber. The point is, it cannot be *both* individuals. Both might sue, but only one can recover – and more important, only one *can be a class member*. Verkhovskaya's inability to differentiate between users and subscribers causes the class to be unascertainable.

Finally, the work that Verkhovskaya actually performed requires no specialized knowledge, skill, experience, training or education. Respectfully, Verkhovskaya did little more than outsource the work she was asked to perform to Nexxa. That does not make her an expert.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Vivint's motion.

For the reasons set forth herein, as well as those in Vivint's motion, this Court should strike and exclude the testimony of Verkhovskaya and bar her from testifying in this matter.

I. **VERKHOVSKAYA LACKS A RELIABLE FOUNDATION FOR HER OPINIONS, DOES NOT UTILIZE A RELIABLE METHODOLOGY, PROVIDES IRRELEVANT CONCLUSIONS AND DID NOT PERFORM ANY TASK THAT REQUIRES ANY EXPERTISE.**

A. <u>**There is No Foundation in the Record for the Source Data.**</u>

As set forth in Vivint's Motion, there is no evidence to indicate what the Source Data purports to be, much less any evidence regarding who prepared it, how it was made or kept, or that the data is trustworthy or reliable.  (Verkhovskaya Dep. at 43-47).  The lack of any foundation for the Source Data renders Verkhovskaya's conclusions based on that information inadmissible, as there is absolutely no basis to conclude that the Source Data constitutes "sufficient facts or data" as required by Rule 702.  *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) ("It is true that relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2nd Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

Benzion argues that Verkhovskaya's testimony is limited to "data analysis," and that the facts regarding the underlying Source Data and its connection to Vivint "are readily established by other witnesses."  (Resp., pp. 7-8).  But Benzion does not say what "other witnesses" would offer the necessary foundational testimony.  That is because none exist.  Benzion has taken testimony from neither Five9 nor DirectAccess – the only entities whose representatives might have knowledge of how the Source Data was made and kept and what it purports to show.

Benzion has not offered any evidence regarding what the Source Data is and how or that it is reliable.  For example, there is no evidence regarding (i) what system made or kept the records, (ii) who made the records, (iii) when the records were made, (iv) how the records were made, (v) how the records were kept, (vi) what the records represent, and (vii) whether the

3

records were audited for accuracy. The reason there is no such evidence is that Benzion has not taken the deposition of anyone with personal knowledge of that information.[2]

The unreliable nature of the Five9 records might be best exemplified by Plaintiff claiming in one brief that the Source Data represents Five9 calls logs for a six-month period of time (Dkt. 164 at 6), while simultaneously claiming in another brief that "Five9 destroys its call logs after 60 days" (Dkt. 166 at 7, n.8). Those two claims cannot both be correct. If Five9 destroys its records every two months, how could Five9 have produced calls logs that go back at least six months?

While the evidence on which Verkhovskaya bases her opinions and conclusions need not necessarily be admissible, it must at least be supported by a sufficient foundation—in the record—to allow the Court to determine that it is reliable. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (". . . a trial court may exclude expert testimony … whose factual basis is not adequately explained."); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."). Here, Benzion offers no foundation whatsoever for the Source Data, from Verkhovskaya or anyone else.[3] Conclusions based upon that Source Data are therefore not based on sufficient facts or data as required by Rule 702.

> **B.     Verkhovskaya Utilizes an Unreliable Methodology That Cannot Be Verified by a Rebuttal Expert.**

Verkhovskaya's testimony is based on an unreliable methodology that does not allow for her work to be tested or verified. Verkhovskaya even testified that the reports she generated and

---

[2] It is true, as Benzion points out, that discovery is still open. But class discovery must be completed *before* filing a motion for class certification. A plaintiff may not move for class certification on the basis that future discovery might provide the evidence necessary to support the plaintiff's arguments for certification.

[3] Throughout the briefing related to Plaintiff's Motion for Class Certification, Benzion repeatedly makes statements without any citation to any evidence or the discovery record. This Court should not permit Benzion to make statements like: "These facts are readily established by other witnesses" (Dkt. 164 at 8) without citing to the testimony (or at least identifying the witnesses Benzion refers to). This is particularly true given Benzion's strident opposition to any evidentiary hearing at which he would be obligated to call witnesses and actually explain the statements he repeats throughout his briefs. (*See* Dkt. 163).

4

the methodology that she used cannot be tested, verified or reproduced by anyone other than AB Data. (Verkhovskaya Dep. at 6-7, 65, 103-105). Indeed, both Vivint and Nexxa maintain proprietary databases that are not available to anyone else. (Verkhovskaya Dep. at 6, 91-92).

Moreover, a substantial portion of Verkhovskaya's opinions relate to data and results that are not even in existence yet. Rather, Benzion and Verkhovskaya want this Court to qualify her as an expert now and just trust that she is capable of competently producing the relevant data at some point in the future. That is unfair to Vivint. Vivint should be able to test the accuracy and reliability of Verkhovskaya's opinions and conclusions *before* she is allowed to offer them. Because it is impossible to verify Verkhovskaya's methodology and the results she may or may not be able to produce, her affidavit should be stricken as unreliable and she should be barred from testifying in this matter. *See Sumner v. Biomet, Inc.*, 434 Fed. Appx. 834, 842-43 (11th Cir. 2011) (affirming district court's exclusion of testimony as unreliable under *Daubert* and Rule 702 where purported expert's opinion "is virtually incapable of being tested"). *Marsh v. W.R. Grace & Co.*, 80 Fed. Appx. 883, 886 (4th Cir. 2003) (purported expert's opinion was "unreliable because it cannot be tested or verified consistently").

In his response, Benzion argues that Vivint is conflating the reliability of Verkhovskaya's methods with the accuracy of her conclusions. (Resp., pp. 9-13). According to Benzion, the proper way to challenge Verkhovskaya's conclusions is by cross-examination. (Resp., pp. 12-13). But Verkhovskaya did not perform the work that supposedly supports her conclusions. An unidentified employee or employees of Nexxa determined which phone numbers were cell phones and how many phone numbers on the Do-Not-Call list received more than two calls in a 12-month period, not Verkhovskaya. (Verkhovskaya Dep. at 10-13, 88-94).

If Nexxa or a Nexxa representative were the proffered expert witness perhaps Vivint could cross-examine that witness. But no such person has been identified or disclosed. Indeed, Verkhovskaya did not even know the name of the employee(s) at Nexxa who performed the data analysis. (Verkhovskaya Dep. at 10-13, 88-94). Because no one from Nexxa was disclosed as an expert, Vivint cannot cross-examine anyone regarding the processes and procedures followed by Nexxa or ask questions about Nexxa's proprietary database.

This problem is exacerbated by the fact that Verkhovskaya could not offer much, if any, guidance on what exactly Nexxa did and how or why Nexxa's work should be considered reliable. When asked about the procedures utilized by Nexxa to perform its work, Verkhovskaya

5

testified: "I do not have first-hand knowledge of it. I rely on their reputation." (Verkhovskaya Dep. at 92). In other words, "trust me, it must have been done right." That is not how it works.

Benzion also argues that Vivint should just hire its own experts to test and challenge Verkhovskaya's testimony. (Resp., pp. 9-10). Simply hiring Nexxa to perform the same tasks and checking to see if the same results are produced does not test whether the results were accurate in the first place—it simply tests whether Nexxa performed the same analysis that it did initially.

Verkhovskaya's methodology and results cannot be tested to verify that they are reliable and accurate. Moreover, cross-examination of Verkhovskaya sheds no light on how Nexxa performed the actual data analysis or why their work is reliable. Consequently, Verkhovskaya's testimony fails to satisfy the requirements of *Daubert* and should be stricken.

    **C.**    **The Class Is Not Ascertainable Because Verkhovskaya Cannot Distinguish Between the Users of Cell Phones and Subscribers For Cell Phone Service.**

The opinions offered by Verkhovskaya should also be stricken as irrelevant. Verkhovskaya admittedly cannot distinguish between the user of a cell phone and the subscriber for a cell phone plan. (Verkhovskaya Dep. at 109-110). Benzion claims that this distinction is merely a disputed legal issue that is irrelevant for purposes of class certification. (Dkt. 164 at 13-14). Benzion's argument misses the mark because he conflates standing to file a TCPA claim with identifying a class member that is entitled to damages. (Dkt. 164 at 14). While more than one party may have standing to sue under the TCPA based on a single unlawful fax or telephone call, *only one party can recover* damages for a single violation of the TCPA. *See Holtzman v. Turza*, No. 08-cv-2014, 2009 WL 3334909, at * 6 (N.D. Ill. Oct. 14, 2009) (finding a proposed class definition to be improper because it "could prompt multiple claims stemming from a singular fax transmission resulting in thousands of dollars in recovery for a single fax"). Vivint's argument does not depend on whether this Court ultimately decides that the TCPA claim belongs to the user or the subscriber. The point is: it cannot belong to both of them. More importantly, *they cannot both be class members*. Benzion's proposed class definition does not attempt to address this problem, and he does not explain how the class he seeks to certify can be ascertained when it is not clear who would be in the class – users or subscribers. Or perhaps it depends on the individual circumstances of any given person.

6

Even if Benzion amended his proposed class definition to focus on either users or subscribers, once it is time to identify class members, Verkhovskaya cannot ascertain – from the documents she was provided – who is who. This is likely true no matter what, but it certainly cannot be done without some explanation from someone at Five9 or DirectAccess what the Source Data purports to show.

It is also worth noting that Benzion fails in his attempt to undermine Vivint's anecdote regarding Benzion being the user of his phone, but not the subscriber. As an initial matter, it is extremely troubling that Benzion relies on the cell phone bill attached to his Response. Benzion not only failed to produce any phone bills in response to Vivint's discovery requests, he testified that he does not even receive a bill and had none to produce.[4] Benzion's counsel then objected to the subpoena served on Pamela Brooks, Benzion's mother, and refused to produce any documents (such as the phone bill attached to his Response), in part based on an objection that any documents she might have were irrelevant. (Dkt. 79 & 92). But when it suits his purpose he shows up with a document that he (i) said he did not have; and (ii) objected to having a third-party produce on the basis that it was irrelevant.

But laying aside Benzion's improper and uncivil discovery behavior, he also incorrectly states that his phone bill lists him as the "subscriber." (Dkt. 164 at 14). The phone bill does not even say the word subscriber, let alone identify Benzion as the subscriber. Rather, the phone bill lists his name next to the cellular phone number, but the bill also bears the name of his mother and is addressed to her. This is not surprising because Benzion's mother is the actual subscriber for the telephone plan. *See Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 109 (N.D. Ill. 2013) ("For purposes of the TCPA a subscriber is not just the regular user of the cellphone; rather, a subscriber is the person subscribing to the called number at the time the call is placed.") (internal footnote omitted). (*See also* Plaintiff Benzion's Responses to Vivint's First Set of Interrogatories No. 6; Benzion Dep. at 67). Just because Benzion's name appears on the bill as the *user* of the phone number in question does not show that a search of that phone number would lead to Benzion, rather than his mother.

---

[4] (Benzion Dep. at 18) ("I don't know if I receive a bill. It could be paperless. I don't receive a bill. Electronic. I -- I don't receive an electronic or a paper bill. I just know how much it costs and I log on and pay it.").

### D. Verkhovskaya does not qualify as an expert because her work did not require any specialized knowledge, skill, experience, training or education.

As set forth in Vivint's Motion, Verkhovskaya merely combined 25 spreadsheets into one, sorted it, and sent the output to Nexxa to check the results against a database of cell phone numbers and the DNC Registry.  (Verkhovskaya Dep. at 11-12, 49-50, 84-86).  It is difficult to comprehend how that activity could constitute "scientific, technical, or other specialized knowledge," as required by Rule 702.  Any paralegal could combine 25 spreadsheets into one, search those spreadsheets for the words "Vivint" and "Blue Dolphin" and send the results to a third-party vendor to perform the work Nexxa performed.  That is not the work of an expert.  Because Verkhovskaya's work does not involve "scientific, technical, or other specialized knowledge," her testimony fails to satisfy the requirements of Rule 702 and should therefore be stricken.

In his Response, Benzion claims that Vivint "greatly understates the process undertaken by Ms. Verkhovskaya and AB Data." (Dkt. 164 at 5).  Remarkably, Plaintiff attempts to bolster this contention by highlighting—in the very next sentence—that "Ms. Verkhovskaya retained Nexxa Group, Inc., a leading database compiler, to provide a breakdown of how many of the numbers [sic] were made to cell phones." (*Id.*).  While Nexxa may have performed activity that would require "scientific, technical, or other specialized knowledge," no expertise was required to hire Nexxa.

Perhaps realizing the strength of Vivint's argument in this regard, Benzion offers a creative fallback argument that even if Verkhovskaya does not qualify as an expert, her testimony is nonetheless admissible as "summary testimony" under Rules 701 or 1006 of the Federal Rules of Evidence.  (Dkt. 164 at 15-16).  Benzion's argument is entirely without merit and lacking in citation to any authority whatsoever.  As an initial matter, Verkhovskaya is not providing a "summary" of the Source Data under any reasonable definition of the word summary; rather, Benzion is offering a different set of the same data with additional information appended to it.   (Verkhovskaya Dep. at 9-10) ("We appended an identifier, whether a phone number or a cellular phone number, a mobile phone number… And whether that phone number was on the do-not-call list.").  Certainly adding additional information to already voluminous data cannot constitute a summary of that initial data.

Verkhovskaya's testimony cannot be admitted as summary evidence for the additional and independent reason that the underlying Source Data is not admissible, which is a requirement for summary evidence. *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004) ("The materials or documents on which a Rule 1006 exhibit is based… must be admissible under the Federal Rules of Evidence. In other words, Rule 1006 is not a back-door vehicle for the introduction of evidence which is otherwise inadmissible."); *U.S. v. Benabe*, 436 Fed. Appx. 639, 650 (7th Cir. 2011) (Rule 1006 "is not an end-run around other rules of admissibility. The underlying records must be accurate and otherwise admissible as evidence for Rule 1006 to apply to a summary of the underlying records."); *U.S. v. Irvin*, 682 F.3d 1254, 1261 (10th Cir. 2012) ("The materials summarized by Rule 1006 evidence must themselves be admissible because a contrary rule would inappropriately provide litigants with a means of avoiding rules governing the admission of evidence such as hearsay.") (internal quotations omitted). As set forth above and in Vivint's Motion, Benzion has offered no foundation for the admission of the Source Data into evidence. Indeed, Benzion is attempting the exact type of end-run around the rules of admissibility that the foregoing authority prohibits.

Without obtaining competent testimony to explain what the Source Data purport to show, Benzion's efforts to support his motion for class certification with it must fail.

## II.   CONCLUSION

The testimony of Anya Verkhovskaya should be rejected by this Court. Verkhovskaya's opinions are not based on "sufficient facts or data" as required by Rule 702. Moreover, Verkhovskaya's methodology is unreliable and the accuracy of her results cannot be tested by Vivint's experts. In addition, Verkhovskaya did not perform any activity that required any expertise under Rule 702, as she merely outsourced the tasks she was asked to perform. This Court should strike and exclude the testimony of Verkhovskaya and bar her from testifying in this matter.

Dated:  December 26, 2013	/s/ Bruce E. Reinhart
Bruce E. Reinhart
Florida Bar No. 0010762
Flagler Center Tower
505 South Flagler Drive, Suite 300
West Palm Beach, Florida 33401
Phone:  561-472-2970
*breinhart@mcdonaldhopkins.com*

Thomas J. Cunningham  (*pro hac vice*)
Martin W. Jaszczuk  (*pro hac vice*)
111 South Wacker Drive
Chicago, Illinois  60606
Phone:  312-443-0610
*tcunningham@lockelord.com*
*mjaszczuk@lockelord.com*

*Attorneys for Defendant Vivint, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of December, 2013, I filed **VIVINT, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE THE OPINIONS OF PLAINTIFF'S PROPOSED EXPERT WITNESS ANYA VERKHOVSKAYA AND TO BAR HER FROM TESTIFYING** with the Clerk of the Court, using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

Scott D. Owens
SCOTT D. OWENS, P.A.
664 East Hallandale Beach Boulevard
Hallandale, FL 33009
*scott@scottdowens.com*

Daniel J. Marovitch
MAROVITCH LAW FIRM, LLC
233 South Wacker Drive, 84th Floor
Chicago, IL 60606
*dmarovitch@marovitchlaw.com*

Matthew McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
*mmccue@massattorneys.net*

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, IL 60601
*aburke@burkelawllc.com*

Edward A Broderick
Anthony Paronich
BRODERICK LAW, PC
125 Summer Street, Suite 1030
Boston, MA 01760
*ted@broderick-law.com*
*anthony@broderick-law.com*

                                                  /s/ Bruce E. Reinhart

                                        *One of the Attorneys for Defendant Vivint, Inc.*