# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

Case No. 0:12-cv-61826-WJZ

MATTHEW BENZION, individually and
on behalf of others similarly situated,

                 Plaintiff,

    v.

VIVINT, INC.,

                 Defendant.

_____/

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT,
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii

I.      INTRODUCTION ..................................................................................................1

II.     SUMMARY OF THE LITIGATION,  MEDIATION & SETTLEMENT.......................4

        A.  Plaintiff's Claims and Litigation History...................................................4

        B.  The Parties' Settlement Efforts and Negotiations.......................................6

III.    SETTLEMENT TERMS ........................................................................................7

        A.  Class Definition and Notice .......................................................................7

        B.  Settlement fund ..........................................................................................8

        C.  Other Relief................................................................................................8

        D.  Release .......................................................................................................9

IV.     CLASS MEMBERS HAVE BEEN PROVIDED SUFFICIENT NOTICE OF THE
        ACTION AND THE SETTLEMENT ....................................................................9

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND THUS
        MERITS FINAL APPROVAL .............................................................................11

        A.  The Settlement Was the Result of Arm's-Length Negotiation Between the Parties
            with the Assistance of an Experienced Mediator........................................12

        B.  The Settlement Satisfies Each of the *Bennett* Factors. ..............................13

            1.  Likelihood of Success at Trial ......................................................14

            2.  Range of Possible Recovery and Point at Which Settlement is Fair,
                Reasonable, and Adequate .............................................................16

            3.  Complexity, Expense, and Duration of Litigation .........................17

            4.  Substance and Amount of Opposition to Settlement .....................18

            5.  Stage of Proceedings at Which Settlement was Achieved..............19

VI.     ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD ARE REASONABLE ........20

        A.  Class Counsel Exerted a Great Deal of Time and Effort in This Case and Were
            Consequently Precluded from Accepting Other Employment.................21

        B.  The Case Involved Difficult Issues and the Risk of Nonpayment and Not
            Prevailing on the Claims Was High..........................................................23

        C.  Class Counsel Achieved an Excellent Result for the Settlement Class Members .....24

        D.  The Requested Fee is Consistent With Those Awarded in Other Similarly
            Complex Class Settlements in This Circuit ...............................................24

        E.  A High Level of Skill Was Required to Perform the Legal Services Properly ..........26

VII.    THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFF SHOULD BE
        APPROVED .........................................................................................................26

VIII.   CONCLUSION.....................................................................................................28

CERTIFICATE OF SERVICE ..............................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*, 00-cv-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ............................................................................................................................19

*Adams, et al., v. AllianceOne Receivables Management, Inc.*, 08-CV-0248 (S.D. Cal) ................24, 27

*Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ....................................................................................................................18, 25, 27

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) .............12,13,14,16,17,18,19,28

*Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012) .............................................................................................................................6

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985 ....................................................27

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ............................20,21,22

*Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) .........................................21

*Connor v. JP Morgan Chase*, 10-cv-1284 (S.D. Cal.) ........................................................24

*Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ..............................................12,17

*Desai v. ADT Sec. Servs., Inc.*, 2011 WL 2837435, at *1-3 (N.D. Ill. July 18, 2011) ..................6

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) ......................................10

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007). ..................14,16

*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) .........................................................................................................23

*Fresco v. Auto. Directions, Inc.*, No. 03-cv-61063, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009) ..........................................................................................................................14,19

*Henry v. Sears Roebuck & Co.*, 98-CV-4110, 1999 WL 33496080 (N.D. Ill. July 23, 1999) .........3

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) .........................................................21

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) . . 12, 13, 17, 20, 22, 23, 24, 25

*In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1317 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S.247 (2010) .........................................9

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990)) ....27

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,* 1995 WL 798907, at *13 (S.D.N.Y. Nov.20, 1995) ...........................................................................................................................3

*In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993) ...........................................18

*In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) .............11,16,19,23,26

*In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill. 2002)................15

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ....................................................12

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ..........................................13, 27

*Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974) .........................................21

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ................................................15

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005)..........11,14,16,17,18

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) ................................16

*Mey v. Pinnacle Security Servs.*, No. 11-00047, 2012 WL4009718, at *4 (N.D. W. Va., Sept. 12, 2012) ..............................................................................................................................6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ........................................10

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 432 (11th Cir. 2012) ................... 20,27 (unpublished)

*Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. N.Y. 2003) ……….15

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007)….14,17,18,19

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007)……21,23,25

*Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007)………………23

*Su v. Electronic Arts, Inc.*, 2006 WL 4792780, *5 (M.D.Fl. 2006)……………………..27

*Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) …………….6

*U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008)……………………………..9

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) …21,25

*Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012)..21, 25

*Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983)………………….. 22

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227

**Rules**

47 C.F.R. § 1200(d)(3)
47 C.F.R. § 1200(c)(2)

**References**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf /$file/notcheck.pdf.*

*Newberg on Class Actions,* § 11.55 (3d ed.1992)

# I.       INTRODUCTION

Plaintiff Matthew Benzion ("Plaintiff"), individually and as representative of the "Settlement Class Members" submits this Motion and Memorandum in Support of Final Approval of Class Action Settlement.[1] Defendant Vivint, Inc. ("Defendant" or "Vivint") does not oppose the relief requested in this Motion and consents to an order granting final approval to the class action settlement and the Parties' Settlement Agreement in the form submitted herewith.[2]

Plaintiff and Settlement Class Members received autodialed or prerecorded calls to their cellular telephones without their prior express consent, or received telemarketing calls despite being on the National or Defendant's own Do Not Call list, where such calls were placed by third parties acting on behalf of Defendant between September 17, 2008 and May 1, 2014. Based on this, Plaintiff alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and associated regulations and FCC rulings ("TCPA"), in three counts: Count I - Violations of 47 U.S.C. § 227(b) for making autodialed calls or using pre-recorded messages in calls to Plaintiff's and Settlement Class Members' cellular telephones without their prior express consent, Count II – violations of 47 C.F.R. § 1200(d)(3) for failing to cease calling after requests to stop, and Count III – violations of 47 C.F.R. § 1200(c)(2) for placing telemarketing calls to Settlement Class Members on the National Do Not Call Registry. Through discovery, Plaintiff was able to identify 581,183 Settlement Class Members who could receive direct mailed notice.  Through extensive arm's length negotiations, the Parties arrived at a settlement which is both fair and equitable.

---

[1] Capitalized words in this Motion correspond to defined terms in the Settlement Agreement Dkt/ 177-2.  Plaintiff obtained permission of the Court to file an oversized brief by Minute Entry dated August 14, 2014, Dkt. 191.
[2] Vivint's non-opposition is for purposes of settlement only, and it does not adopt Plaintiff's allegations nor does it make any admissions or waive any defenses by its non-opposition.

The Parties' proposed settlement is worthy of final approval for several reasons. First, it provides certainty for the Settlement Class where their recovery would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached while the Plaintiff's motion for class certification was fully briefed and pending, and only after first engaging in substantial litigation, discovery, dispositive motion practice, and extensive arm's-length negotiations along with multiple mediation sessions. Third, the deal was not conditioned on any set amount of attorneys' fees or incentive award to proposed Class Counsel or Plaintiff, which speaks to the fundamental fairness of the process. The settlement establishes a $6,000,000 Settlement Fund and additionally provides for non-monetary, prospective relief.  If approved, the settlement would bring a sure end to what otherwise has been, and likely would continue to be, contentious and costly litigation centered on the unsettled legal question of Vivint's liability for the allegedly unlawful telemarketing practices of third parties it hired.

On June 9, 2014, this Court granted Preliminary Approval of Class Action Settlement, [ECF No. 179], and the Settlement Class was noticed through publication and direct notice in accordance with the Notice Plan, [ECF No. 177-2]. The response from the Settlement Class has been overwhelmingly positive – over 47,670 Settlement Class Members have filed claim forms. *See Supplemental Declaration of Christina Peters-Stasiewicz*, of AB Data at ¶ 30, Class Administrator, attached hereto as Ex. 1. ("*Peters-Stasiewicz Declaration*.") Furthermore, only twenty timely requests for exclusion were received, as well as six" objections", including two objections from individuals who lack standing, including an objector who requested exclusion and thus did not have standing to object.[3] *See Henry v. Sears Roebuck & Co.*, 98-CV-4110, 1999

---

[3] Peters-Stasiewicz Declaration ¶26.

WL 33496080 (N.D. Ill. July 23, 1999); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.,* 1995 WL 798907, at *13 (S.D.N.Y. Nov.20, 1995) ("the Hutman objectors have each filed exclusion requests and lack standing to object here"); *Newberg on Class Actions,* § 11.55 (3d ed.1992) ("an objection may be registered by any class member ... who has not previously excluded himself or herself from the class").

Additionally, Plaintiff's incentive award of $20,000 and his counsel's requested fee award of $2 million should be granted because they are reasonable. Plaintiff received a large number of allegedly illegal calls and his individual recovery of statutory damages would likely have been significantly higher than this award.  Also, this contentious litigation has demanded much from both Plaintiff and his Counsel, including Plaintiff's two depositions, more than ten other depositions and more than thirty third party subpoenas, numerous mediations, extensive investigation both pre-suit and through hotly contested discovery, extensive briefing of dispositive and other motions, and full briefing of Plaintiff's Motion for Class Certification. In light of these efforts and the significant monetary and non-monetary benefits procured for the Settlement Class, the requested incentive and fee awards should be granted.

For all of these reasons, and as described further below, Plaintiff respectfully requests that the Court grant his unopposed motion for final approval in its entirety.

II.    **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT**

   A.  **Plaintiff's Claims and Litigation History**

In his Second Amended Complaint, and throughout the litigation, Plaintiff has alleged that the Defendant, a Utah-based home automation and security company, utilized telemarketing to market its products and services.  In 2009, the Defendant contracted with 1to1 Sales Group LLC, a company owned and operated by Jody Rookstool and Ben George, for telemarketing lead generation services.  The arrangement between Vivint and its lead generator contemplated, among other things, the use of a Vivint-approved, prerecorded script to find consumers who were interested in buying Vivint goods and services. This contractual relationship continued with the various iterations of Mr. Rookstool and Mr. George's business until it closed in July 2012.[4] From approximately January to July 2012, Vivint also contracted with Blue Dolphin Media, Inc. ("Blue Dolphin"), another lead generator that sub-contracted with the same company operated by Mr. Rookstool and Mr. George to provide it with telemarketing-generated leads that it would ultimately provide to Vivint.

   The telemarketing calls to generate leads for Vivint were made initially through the Utah-based CallAssistant, L.C. and then, starting in approximately fall 2010 until Axium closed in July 2012, through DirectAccess Corp., a now-defunct foreign call center in the Philippines.  All calls (including those that generated Vivint leads for Blue Dolphin) were made using a predictive dialer to consumers whose numbers were acquired in the exact same manner—based on generic "opt-in" data of consumers' alleged submissions to unaffiliated third-party websites with broad telemarketing policies—which was purchased by Axium from the same source, the Canadian

---

[4] Between 2009 and 2012, Mr. Rookstool and Mr. George provided lead generation services to Vivint first under their company 1to1 Sales Group LLC, then Savantius, LLC, then Revocalize, LLC, and then finally Axium Marketing, LLC.  The Rookstool/George business is referred to generally herein as "Axium."

company Opt In Plus, Inc.  The lead generation calls were all made using prerecorded snippets of a Vivint-approved script played by a representative pressing the respective key on his or her keyboard during the call, and once a consumer expressed potential interest in learning more, he or she would either be called back shortly or directly transferred to Vivint's own sales staff to attempt to close the sale.

Plaintiff repeatedly received these same prerecorded snippet "home security" calls to his cell phone as the other Settlement Class Members.  Like the other members of the Settlement Class, the calls to Plaintiff's cell phone were made by the same predictive dialing equipment, which the Plaintiff contends is an impermissible Automatic Telephone Dialing System ("ATDS" or "autodialer").  Also like other members of the Settlement Class, Plaintiff registered his cell phone number with the National Do Not Call Registry, and was called at least twice thereafter with lead generation calls promoting Vivint's products and services.

As the calls that are alleged to have violated the TCPA were made by third parties, Plaintiff engaged in extensive third-party discovery to obtain those associated records.  Plaintiff was able to obtain records of telemarketing calls that were maintained by Five9, Inc., a California telecommunication services company that provides an array of products and services to its clients, including cloud-based predictive dialer software for outbound calling.  In October of 2010, Axium (initially through its Savantius, LLC entity) entered into a Customer License Agreement with Five9 for the use of Five9's proprietary hosted virtual call center software and system.  Five9's hosted virtual call center software and system works as a predictive dialer, enabling the user to make telephone calls to a pre-loaded list of recipient phone numbers that have been created and input by the user.  In response to a subpoena, Five9 produced call logs, including those the Plaintiff seeks to utilize to identify class members, and executed an affidavit

affirming that those logs were kept "in the ordinary course of business" and that "these call[]

logs generally identify the ANI used, call data and time, number called, certain identifying

information of the party called, and the customer campaign [i.e., "VIVINT" or "APX".]"

From the inception of the action, and throughout the period Plaintiff and his counsel

invested their time and money prosecuting these claims, the parties have litigated this case in the

shadow of uncertainty regarding the central legal question presented by this case—whether

Vivint, who did not place telemarketing calls to Plaintiff or class members, could be liable for

TCPA violations committed by its alleged agents.  Courts have been sharply divided on this

issue.  *Compare Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, 2011 WL 2837435, at *1-3 (N.D.

Ill. July 18, 2011) (denying ADT's motion to dismiss, and finding that TCPA liability does not

require a party to make a call), *and Birchmeier v. Caribbean Cruise Line, Inc.,* No. 12-4069,

2012 WL 7062748 (N.D. Ill. Dec. 31, 2012), with *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d

1079, 1084 (C.D. Cal. 2012) (absence of "on behalf of" language in 47 U.S.C. § 227(b)—unlike

Section 227(c)(5)—means the entity whose goods are advertised in a prerecorded message is not

liable under the TCPA unless traditional vicarious liability principles are satisfied); *Mey v.

Pinnacle Security Servs.*, No. 11-00047, 2012 WL4009718, at *4 (N.D. W. Va., Sept. 12, 2012)

(granting summary judgment to defendant on ground that the security company on whose behalf

telemarketing calls allegedly were placed played only "a passive role" in its interaction with lead

generators, and rejecting FCC's previously-stated views regarding "on behalf of" TCPA

liability).

### B.  The Parties' Settlement Efforts and Negotiations

The parties and counsel mediated this matter with John W. Salmon, Esq., of Salmon &

Dulberg Dispute Resolution in Miami, Florida, on May 16, 2013.  *See* Exhibit 2, *Declaration of*

*Edward A. Broderick in Support of Plaintiff's Motion for Unopposed Motion for Final Approval of Class Action Settlement* ¶12. ("*Broderick Declaration.*")  Following these initial negotiations, the parties engaged in settlement talks in between counsel, including a day-long session in Chicago on February 18, 2014. *Id.*  Finally, the parties engaged in a day-long mediation session with Hon. Theodore E. Bandstra of JAMS Alternative Dispute Resolution in Miami, Florida, on March 19, 2014. *Id.*  These discussions culminated in the settlement agreement for which Plaintiff is now asking the Court to grant final approval.

## III.  SETTLEMENT TERMS

### A.  Class Definition and Notice

Plaintiff requests final approval of a Settlement Class defined as follows:

All persons or entities within the United States of America who, at any time from September 17, 2008 through May 1, 2014, received one or more Covered Calls. "Covered Calls" means either (1) a call utilizing a pre-recorded message; (2) a call made through the use of automated dialing equipment; or (3) a call made to a telephone number that was registered on the National Do Not Call Registry or that was on Vivint's internal "Do Not Call" list, where the call described in (1), (2) and/or (3) relates in any way to Vivint products or services or was intended to generate a sales lead to be delivered to Vivint. Covered Calls include calls initiated or made by Vivint or by someone acting or purporting to act on behalf of Vivint, relating in any way to Vivint or Vivint's business, including calls made by Vivint's Dealers, Vivint's Telemarketers, Vivint's Lead Generators, Vivint's Marketing Partners, or by anyone seeking to generate leads to be delivered to Vivint, or any calls initiated or made by anyone seeking to generate leads for anyone else where the lead sought to be generated from the call ultimately could have been delivered to Vivint or Vivint's Telemarketers, Vivint's Lead Generators, or Vivint's Marketing Partners. Covered Calls include any such calls, whether or not authorized by, approved by, or known by Vivint.

Based on the discovery conducted during litigation, direct notice was given to each of the 581,183 settlement class members for whom an address was located though a "Reverse Append" address look-up of their telephone number and comparison with the U.S. Post Office's National

Change of Address (NCOA) database.[5]  Publication notice included the creation of a comprehensive settlement website—which allowed Settlement Class Members to submit Claim Forms and view the detailed notice, case documents, and other information relating to the case and settlement—as well as an online text and banner ad campaign through national networks *Valueclick* (now known as *Conversant)*, *Facebook*, and *MSN*,  and inserts within the national print circulations *People*, *Sports Illustrated*, and *USA Weekend*. *See Peters-Stasiewicz Declaration* ¶16, 21.  Although the Notice Plan approved by the Court anticipated 342.5 million online advertisement views (or "impressions"), the actual results greatly exceeded that figure, with a total of 464 million impressions generated. *Id.*

### B.  Settlement fund

The proposed Settlement would establish a $6,000,000 Settlement Fund that will be used to make class member claimant payments, and pay notice and administration costs (which total $941,114.33 to date), Court-approved attorneys' fees, costs, and expenses, and any Court-approved service payment to Plaintiff.  Authorized claimants are entitled to equal shares of the remainder of the Settlement Fund after payments for notice, administration, attorneys' fees and costs, and Plaintiff's incentive award.  The proposed anticipated Class Member payment will total $61.49 will be distributed if final approval is granted. *Peters-Stasiewicz Declaration* ¶32.

### C.  Other Relief

In addition to economic relief, Vivint has provided representations and warranties that, in order to ensure compliance with the TCPA, it has instituted significant improvements to its policies and procedures with respect to the use of autodialing systems and pre-recorded voice calls for the purposes of telemarketing.  Under the terms of the settlement, Vivint agrees to

---

[5] Peters-Stasiewicz Declaration. at ¶ 7.

maintain these practices for a minimum of two years from the effective date of the settlement, which also include adjustments to the telemarketing guidelines of its authorized dealers and agreements with its third-party telemarketers.

### D.  Release

The release is appropriately tailored to the claims raised in the case.  In exchange for settlement benefits, Plaintiff and participating Settlement Class Members will release Vivint, its dealers, telemarketers, lead generators, marketing partners, and related parties from any and all claims by the Settlement Class that relate in any way to calls as defined in the settlement, including any claims that were brought or could have been brought in the litigation, including any federal or state law claims, in addition to any claims under the TCPA.

### IV.   CLASS MEMBERS HAVE BEEN PROVIDED SUFFICIENT NOTICE OF THE ACTION AND THE SETTLEMENT

Rule 23 requires the court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

In order to satisfy these requirements, notice of a class settlement must "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determinations regarding whether the settlement serves their interests." *Alabama*, 271 F. App'x at 900-01; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1317 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561

U.S.247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Neither Rule 23 nor due process requires receipt of actual notice by all class members, *Jurvis v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012), and the Federal Judicial Center has suggested that a notice plan that reaches 70% of class members is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf /$file/notcheck.pdf* (Last Visited on August 11, 2014). Further, in determining the sufficiency of class notice, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901. However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted).

Here, this Court approved the notice plan set forth in the Settlement Agreement, which called for both direct notice through US mail, and publication notice both online and through print sources. In approving the Notice Plan, this Court found that "its terms and conditions constitutes the best notice practicable under the circumstances . . . and satisfies fully the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law." [ECF No. 179; ¶ 8].

The Settlement Administrator and the Parties followed the Court-approved Notice Plan. First, Class Counsel provided the Settlement Administrator with an electronic file containing the telephone numbers for 581,183 Settlement Class Members who could be identified from calling records. *Peters-Stasiewicz Declaration* ¶ 6. The Settlement Administrator utilized a "Reverse

Append" address look-up of their telephone number to associate an address with each Settlement Class Member's telephone number. Also, the Settlement Administrator updated the subsequent mailing list by checking each of the addresses against the U.S. Postal Service's National Change of Address database. The Settlement Administrator sent the Court-approved notice via First Class U.S. Mail on June 23, 2014 to 581,183 Settlement Class Members. *Peters-Stasiewicz Declaration* ¶ 11. 134,853 notices were returned undelivered. *Id.* ¶ 13. Of those, 1,077 had a USPS forwarding address and were subsequently re-mailed. *Id.* 447,407 Direct Notices were mailed or re-mailed successfully. Accordingly, 76.9% of the notices were delivered.  Far more than a sufficient percentage of the class members received direct notice of the Settlement by U.S. Mail. (*Id.*) Also, publication notice was provided through the online and print sources described above. Finally, in accordance with the Notice Plan and the Class Action Fairness Act, 28 U.S.C. § 1715, The Class Administrator sent notice of the Settlement to the United States Attorney General and the Attorneys General of each state and U.S. territory. *Peters-Stasiewicz Declaration* at ¶5.

In short, not only did the notice provided to the Classes comply with the Court-approved amended Notice Plan, Rule 23, and Due Process, it was also ultimately successful.

## V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND THUS MERITS FINAL APPROVAL

Under Rule 23, this Court may approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also, CP Ships*, 578 F.3d at 1317-18 ("The district court reviews a class action settlement to determine whether it is fair, reasonable and adequate.").  In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arms-length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005);

*see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  A proposed class action settlement should be reviewed in light of the strong public and judicial policy favoring settlement of class actions, and, in doing so, the Court should not substitute its judgment for that of the parties.  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

In determining whether a settlement is fair, reasonable, and adequate, the Eleventh Circuit instructs courts to consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*CP Ships*, 578 F.3d at 1318 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  Ultimately, "[a] settlement is fair, reasonable and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  *In re Checking*, 830 F. Supp. 2d at 1344.  Here, the Settlement Agreement easily passes both tests, having been the product of arm's-length, informed negotiations between the Parties with the assistance of two neutral mediators, and satisfying each of the Eleventh Circuit's *Bennett* factors.

### A.  The Settlement Was the Result of Arm's-Length Negotiation Between the Parties with the Assistance of Experienced Mediators.

The Parties traveled a tortuous path to settlement in this case. Initially, mediation was held before John W. Salmon, Esq., of Salmon & Dulberg Dispute Resolution on May 16, 2013.

Notably, this first mediation occurred after approximately nine months of contentious litigation. Following the first formal attempt to reach a settlement, the Parties' Counsel engaged in extensive negotiations which included a full day meeting in Chicago on February 18, 2014. Still unable to resolve their differences, the Parties enlisted the help of a second mediator, the Honorable Theodore E. Bandstra (Ret.), Chief Magistrate Judge for the Southern District of Florida. After a final exhaustive mediation on March 19, 2014, the Parties arrived at the agreement now before this Court.

Significant evidence shows that the Settlement is not collusive and is the product of arm's length negotiations. First, it comes after approximately eighteen months of litigation, which included numerous discovery disputes, dispositive motions, and an inability to agree on virtually anything from page limitations to the litigation schedule. Next, the work of two experienced mediators confirms that the parties were not colluding. *See Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. at 662 (finding an absence of collusion where settlement was reached with capable and experienced counsel with the assistance of a well- qualified and experienced mediator). Moreover, the Parties agreed on the terms of the Settlement through experienced counsel, who had at their disposal both prior to the mediation sessions and during subsequent negotiations ample information to evaluate the terms of any proposed agreement so as to reach a fair and reasonable compromise.

As such, it is clear that the Settlement was the result of arm's-length and informed negotiation between the Parties, and given that, this Court should not hesitate to approve it.

13

**B.  The Settlement Satisfies Each of the *Bennett* Factors.**

In addition to being the result of arm's-length negotiations free from fraud or collusion, the Settlement here also satisfies each of the *Bennett* factors.  While the Eleventh Circuit instructs district courts to consider the *Bennett* factors, "[i]n evaluating these considerations, the district court should not try the case on the merits."  *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007).  "Rather, the court must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel."  *Id*.  Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement.

**1.      *Likelihood of Success at Trial***

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial.  "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement."  *Lipuma*, 406 F. Supp. 2d at 1319; s*ee also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007).  Where success at trial is not certain for plaintiff, this factor weighs in favor of approving the settlement. *See Fresco v. Auto. Directions, Inc.*, No. 03-cv-61063, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009). Here, a central element of the case – Vivint's liability for actions undertaken by third parties on its behalf – is an unsettled question of law. Furthermore, Defendant had moved to dismiss Plaintiff's Second Amended Complaint, [ECF No. 116], arguing that Plaintiff had failed to adequately allege that Vivint placed calls using an autodialer and failed to implement the procedures set forth in  47 C.F.R. § 64.1200(c) and (d). Although Plaintiff effectively opposed Defendant's motion to dismiss regarding his first and third counts relating to violations of the TCPA's prohibitions against autodialed or prerecorded

calls to cell phones or to numbers registered with the National Do Not Call Registry,[6] there was a genuine risk that Defendant could prevail on some or all of the issues raised.

Moreover, at least some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. N.Y. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill. 2002) (declining to certify class where it "could result in statutory minimum damages of over $19 billion, which is grossly disproportionate to any actual damage").

In *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit noted that cases involving statutory damages (such as the TCPA) face particular burdens at certification:

> There are also several reasons courts commonly cite as to why it is particularly undesirable to litigate a class's claims in a single judicial forum. *Perhaps most importantly, we assess whether the potential damages available in a class action are grossly disproportionate to the conduct at issue.* Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to proceed. *Where defendants are being sued for statutory damages for unintentional acts under a strict liability standard, however, courts take a harder look at whether a defendant deserves to be subject to potentially immense liability. …. In cases where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff,"* we are likely to find that individual suits, rather than a single class action, are the superior method of adjudication.

---

[6]     The Court dismissed Plaintiff's claims alleged under the second count of his Second Amended Complaint, relating to alleged violations of the TCPA's company-specific do-not-call rules.  [ECF No. 171.]

382 F.3d at 1271 (all emphasis added) (quoting *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246,

1255 n.5 (11th Cir. 2003)).  While Plaintiff felt he could satisfy even this heightened standard for

certification of case for statutory damages, the risk posed further bolsters that the result achieved

here is an excellent outcome for the class.

        Further, and notwithstanding his belief in the strength of his case, Plaintiff recognizes

that the expense, duration, and complexity of protracted litigation would be substantial and

require further briefing on numerous substantive issues, evidentiary hearings, and further

discovery. Against the inherent uncertainty raised by these issues is the concrete nature of the

relief afforded under the Settlement, where Settlement Class Members will recover a direct cash

payment and Defendant will change its marketing practices. As such, because ultimate success at

trial is far from certain, and the value of the Settlement is unquestionably strong in comparison,

the first *Bennett* factor weighs in favor of approving the Settlement.

### 2. Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate

        Analysis of the second and third *Bennett* factors—the range of possibly recovery and the

point on or below the range at which a settlement is fair, adequate and reasonable—is often

combined. *In re Sunbeam*, 176 F. Supp. 2d at 1331.  As in most litigation, "[t]he range of

potential recovery spans from a finding of non-liability through varying levels of injunctive

relief, in addition to any monetary benefits to class members." *Figueroa*, 517 F. Supp. 2d at 1326

(citing *Lipuma*, 406 F. Supp. 2d at 1322) (internal quotation omitted). However, "the Court's

role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the

proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326.

        Although the Settlement provides only fractional recovery, the "fact that a proposed

settlement amounts to only a fraction of the potential recovery does not mean the settlement is

unfair or inadequate. This is because a settlement must be evaluated "in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350. Here, while Plaintiff believes he would ultimately have prevailed on liability, it would have been extraordinarily difficult to obtain full monetary relief for Class members due to the size of the class and the volume of allegedly illegal calls they received. Given the size of the Settlement Class, a monetary judgment for full statutory damages would have been ruinous for even the largest of companies. Due to the size of the class and scope of the damages, the $6,000,000 Settlement Fund, as well as the promises of reform tendered by Vivint, represents a fair compromise which recognizes the significance of the Settlement Class's claims and the ability of Vivint to make restitution.

### 3.      *Complexity, Expense, and Duration of Litigation*

The next *Bennett* factor to consider is the complexity, expense, and duration of litigation. As the Eleventh Circuit has noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381. In evaluating this *Bennett* factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323. Here, this factor weighs in favor of approving the Settlement Agreement.

In the absence of the Settlement, it is certain that the expense, duration, and complexity of protracted litigation would be substantial. The Parties had yet to file and brief motions for summary judgment, which would have comprised a major investment of time, energy, and

capital in the form of expert witness fees, for both sides. Additionally, if the Court were to grant

class certification or summary judgment in either side's favor, given the amount at issue, the

losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation

of this matter would delay its resolution and inflict unnecessary additional expense on both sides.

Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it

[is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F.

Supp. 2d at 1323 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.La.1993)). *See also*

*Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of

this case, combined with the delays and complexities presented by the nature of the case, the

benefits of a settlement are clear.").

      The complexity, expense, and duration of litigation thus weighs in favor of approving the

Parties' Settlement.

      **4.**     ***Substance and Amount of Opposition to Settlement***

      The next *Bennett* factor to consider is the substance and amount of opposition to the

settlement. Here, the Court-approved notice plan prompted only 20 timely requests for exclusion

and 6 objections. As is set forth in detail in the Plaintiff's Response to Objections to Class

Settlement (186) and Vivint, Inc.'s Ominbus Response to Class Settlement (Dkt. 189) none of

the objections raise issues that justify denying final approval to this settlement.

      The fact there are few objections despite the comprehensive notice provided to the class

demonstrates that class members find the agreement reasonable and fair, and strongly favors

approval of the settlement. *See Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections

points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah*

*Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006)

("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."). Moreover, while notice of the Settlement was sent to the U.S. Attorney General and the Attorneys General of all 50 states, none have voiced any opposition to the terms of the Agreement.  *See* Peters-Stasiewicz Declaration ¶ 27. This lack of governmental opposition to the Settlement likewise militates in favor of its approval. *See Fresco*, 2009 WL 9054828 at *5 (noting, in addressing this *Bennett* factor and approving settlement, that "no state or federal government officials have filed objections"). In all, the reaction of the Settlement Class Members has been overwhelmingly supportive of the Settlement. Accordingly, the substance and amount of opposition to the Settlement is miniscule in comparison to the support behind it, and thus weighs in favor of final approval.

### 5.   *Stage of Proceedings at which Settlement was Achieved*

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, 00-cv-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp. 2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof. This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.").

Here, the Settlement Agreement was eighteen months in the making and not reached until the Parties had engaged in significant motion practice and the commencement of class- and

merits- focused discovery. The proceedings were such that both Parties were aware of the size of the putative class and the range of damages. Hence, there should be no question that, by the time the Settlement was reached, Plaintiff had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of Settlement against continued litigation. The stage of proceedings factor thus weighs in favor of approval as well.

## VI.   THE ATTORNEYS' FEES AND COSTS ARE REASONABLE

Plaintiff's Counsel request $2,000,000 for their attorneys' fees and reimbursement of their costs of $107,503.31. Class Counsel, who are experienced class action attorneys, request that the Court approve the payment of that sum because of the benefits obtained for the Settlement Class Members by the Settlement Agreement. Class counsel have collectively expended a significant amount of time and effort on this case. Their collective lodestar is $1,289,473.00.

Federal Rule of Civil Procedure 23(h) authorizes, pursuant to law or the Parties' agreement, the award of reasonable attorneys' fees to class counsel who prosecute the case. Fed. R. Civ. P. 23(h). Not only does the Settlement here provide for the award of reasonable attorneys' fees from the Settlement Fund, but "[i]t is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1358; *see also Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). While this Court of course has discretion to determine the reasonableness of the requested fee award, negotiated fee awards in class action settlements are strongly encouraged.

*See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

While there is no mandate that a particular percentage of the common fund be awarded as attorneys' fees, the Eleventh Circuit has found "that the majority of common fund fee awards fall between 20% to 30% of the fund . . . [and] directed district courts to view this range as a 'benchmark' which may be adjusted in accordance with the individual circumstances of each case, using the factors set forth in *Johnson v. Georgia Highway Expr., Inc*., 488 F.2d 714 (5th Cir. 1974).[7] *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (internal quotations and citation omitted). The twelve "*Johnson* factors" are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772.

## A. Class Counsel Exerted a Great Deal of Time and Effort in This Case and Were Consequently Precluded from Accepting Other Employment

The first, fourth, and seventh *Johnson* factors—the time and labor, preclusion of other

---

[7]   The benchmark, however, is just that, and fee awards often exceed this guidepost.  *See, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (finding that 33% is the market rate in class actions); *Pinto v. Princess Cruise Lines, Ltd*., 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation.").

employment, and time limitations imposed, respectively—are interrelated inquires and each

support the reasonableness of Class Counsel's fee request. Class Counsel engaged in lengthy,

contentious, and hard-fought litigation before reaching a Settlement. The tasks Class Counsel

was required to perform in order to achieve the beneficial results of the Settlement included:

- An extensive pre-suit investigation of Plaintiff's claims and the claims of the Settlement Class;
- The drafting of three complaints [ECF Nos. 1, 17, and 111] and briefing of opposition to two motions to dismiss [ECF Nos. 30 and 124];
- Class and merits discovery, including the formal and informal production of information and documents, and numerous depositions (including two of Plaintiff);
- Numerous briefings relating to discovery, including addressing Defendant's refusal at the outset of this action to identify the third-party telemarketers it was using to call Plaintiff and other class members [ECF Nos. 19, 26], responding to an attempt by Defendant to stay and phase discovery [ECF No. 32], multiple motions to compel production or inspection of Defendant, Plaintiff, and third parties [ECF Nos. 40, 48, 57, 66, 67, 76, 89, and 97], multiple motions for a protective order or to quash subpoenas [ECF Nos. 45, 58, 70, 79, and 92], responding to a defense motion for issuance of letters rogatory [ECF No. 80], and responding to defense motions to strike/bar Plaintiff's expert witnesses [ECF Nos. 164 and 165];
- Numerous briefings responding to ancillary motions by Defendant, such as a motion to file more than one motion for summary judgment [ECF No. 53], a motion to "clarify" the Court's Scheduling Order [ECF No. 60], a motion for a several-month-long extension to respond to Plaintiff's motion for class certification [ECF No. 129], a motion to "clarify" the Court's Order regarding the scope of a forensic inspection of Plaintiff's electronic devices [ECF No. 138], and a motion to file more than 80 pages in opposition to Plaintiff motion for class certification [ECF No. 145];
- The briefing of a motion for class certification, [ECF Nos. 119 and 166];
- The preparation for and attending of two in-person mediations; and
- Extensive arm's-length settlement negotiations over the course months that culminated in a comprehensive settlement agreement.

These efforts required Class Counsel to spend over 3,244 hours representing Plaintiff and the

Class without compensation.[8] *See* the Declarations attached as Exhibits 2-6. This expenditure of

time and resources has affected Class Counsel's ability to accept other work. *See Yates v. Mobile*

---

[8] Although these Johnson factors involve a general consideration of attorney time and tasks performed, as this Court has stated, "[t]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... [and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

*Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable

hours—and often in significant blocks of time—necessarily had some adverse impact upon the

ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the

award."); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) (noting

that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled

to a premium"). Accordingly, the amount of time and labor devoted to this case supports the

reasonableness of Class Counsel's fee request.

**B. The Case Involved Difficult Issues and the Risk of Nonpayment and Not Prevailing
on the Claims Was High.**

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the questions,

whether the fee is contingent, and the "undesirability" of the case, respectively—are also

interrelated and support the requested fee award. "A determination of a fair fee for Class Counsel

must include consideration of the contingent nature of the fee, the wholly contingent outlay of

out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a

class action are extremely high." *Pinto*, 513 F. Supp. 2d at 1339.  "A contingency fee

arrangement often justifies an increase in the award of attorney's fees." *In re Checking Account

Overdraft Litig.*, 830 F. Supp. 2d at 1364 (citing *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323,

1335 (S.D. Fla. 2001)).  Ultimately, "attorneys' risk is perhaps the foremost factor in

determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-

61677, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto,* 513 F. Supp. 2d at

1339).

As previously mentioned, an unsettled issue of law, specifically Defendant's liability for

the acts of third parties, is at the heart of this case. Additionally, Defendant staged an exhaustive

defense challenging Plaintiff's requested discovery and creating numerous additional issues

pertaining to scheduling and the interpretation of the Court's orders which Plaintiff was forced to brief.  Although Class Counsel were able to achieve an excellent result for Settlement Class Members, this outcome was far from certain when Class Counsel agreed to the representation, and thus, this factor weighs in favor of approving the requested fee. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Undesirability and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

**C.  Class Counsel Achieved an Excellent Result for the Settlement Class Members.**

The eighth and most significant *Johnson* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by Class Counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006).

Here, the creation of a $6,000,000 Settlement Fund weighs strongly in favor of approving the requested fee. First, the will each receive $61.49 each. *Peters-Stasiewicz Declaration* ¶ 32. Additionally, this recovery is significant when compared to other similar approved TCPA class action cases. *Connor v. JP Morgan Chase*, 10-cv-1284 (S.D. Cal.) (approximately 1.7 Million class members with settlement of $9 million); *Adams, et al., v. AllianceOne Receivables Management, Inc.*,  08-CV-0248 (S.D. Cal) (approximately 5.5 Million class members with settlement of $9 million). The concrete and significant monetary benefit obtained for the Settlement Class weighs in favor of Class Counsels' requested award.

**D.  The Requested Fee is Consistent With Those Awarded in Other Similarly Complex Class Settlements in This Circuit.**

The fifth and twelfth *Johnson* factors, the customary fee and awards in similar cases,

respectively, also support a finding that the agreed-upon fee request – which amounts tone third of the Settlement Fund – is reasonable. *See, e.g., Waters*, 190 F.3d 1291 (Eleventh Circuit affirming fee award of 33 1/3% of common fund, using 30% as starting benchmark); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 (finding that a 30% fee is customary in class action cases); *Wolff*, 2012 WL 5290155 at *6 (finding that 33% is the market rate in class actions); *Pinto*, 513 F. Supp. 2d at 1341 ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation."); *Allapattah*, 454 F. Supp. 2d at 1204 (S.D. Fla. 2006) (awarding 31.3% of fund).

Consistent with this volume of work and the innumerable smaller tasks needed to conduct the litigation, class counsel (including lawyers from five firms) collectively incurred hundreds of thousands of dollars in attorney fees and $107,503.31 in out-of-pocket costs in prosecuting this case. *See* Exhibit 2 to 6.[9]  These efforts required thousands of hours of work representing plaintiff and the class without compensation.  This does not include the work still to come after final approval, which will include supervising the administration of the settlement, answering class member questions and resolving any issues that arise. *See, e.g.*, Broderick Decl., ¶ 22.

Accordingly, this factor further favors Class Counsel's request for one third of the common fund.

---

[9] The combined total costs and fees incurred to date is $1,396,976. See Broderick Decl., ¶ 23-24. It is typical for the cost and fee award to be some multiple of the actual costs and fees incurred to account for risk of nonpayment. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999); *Pinto v. Princess Cruise Lines*, 513 F.Supp.2d 1334, 1344 (S.D. Fla. 2007) ("In many cases, including cases in this jurisdiction, multiples much higher than three have been approved.") (collecting cases approving multiples of between 6 and 12 times actual costs and fees). Indeed, in some instances failing to allow a multiplier is an abuse of discretion. *See, e.g., Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002). Here, the agreed cost and fee award is only about 1.28 times the total costs and fees incurred.

**E.  A High Level of Skill Was Required to Perform the Legal Services Properly.**

The remaining *Johnson* factors—the skill required to perform the legal service properly and the experience, reputation, and ability of the attorneys—confirm that the requested fee is reasonable.  As discussed above, Class Counsel were able to successfully resolve this case through a settlement that confers substantial monetary relief to Settlement Class Members, despite litigating against a well-financed Defendant employing top-tier counsel from a national law firm.  *See In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d at 1334  ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.").

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Indeed, Class Counsel regularly engages in major complex litigation involving consumer issues and have frequently been appointed class counsel by courts throughout the country. *See* Exhibit 2 to 6.

Class Counsel used their extensive experience to effectively investigate, prosecute, and settle the claims at issue here, and the results achieved are in line with or exceed those obtained in similar cases.

**VII.    THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFF SHOULD BE APPROVED**

Finally, the Court must consider whether to approve the requested $20,000 incentive award to the named Plaintiff, Matthew Benzion. Courts consistently find it appropriate to provide a named class representative with an incentive award for the benefits they have conferred upon the rest of the class. *See Allapattah*, 454 F. Supp. 2d at 1218-19; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*,

621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs). Courts within the Eleventh Circuit frequently approve incentive awards. *See e.g.* *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 432 (11th Cir. 2012) (unpublished) (awarding $10,000 incentive award); *Ingram v. The Coca Cola Co.*, 200 F.R.D. 685, 694 (N.D.Ga. 2001) (approving $300,000 incentive awards); *Su v. Electronic Arts, Inc.*, 2006 WL 4792780, *5 (M.D.Fl. 2006).

Incentive awards are intended to "compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah,* 454 F. Supp. 2d at 1218-19 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)). Here, the agreed-upon incentive award of $20,000 is entirely reasonable because Mr. Benzion's involvement in the litigation was essential to the ultimate success of the settlement. Throughout the extensive litigation, there was never any pre-arrangement or discussion of an award or the potential for an award in exchange for Mr. Benzion's service.  Nevertheless, the Class Representative dedicated his time and effort to pursuing the claims on behalf of class members, exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action.  From start to finish, Mr. Benzion aided in the investigation of the claims, consulting with Class Counsel, participating in formal and informal discovery, sitting for two depositions, and contributing to the mediation efforts. But for the Class Representative's tireless participation in this litigation, the substantial benefit to the Settlement Class achieved through the settlement would not likely have resulted. Accordingly, Class Counsel requests that the Court approve the requested incentive award of $20,000.

## VIII.  CONCLUSION

As demonstrated above, the Settlement Agreement here—which provides significant and

immediate results for Settlement Class Members—was the result of arm's-length, informed

negotiation and satisfies each of the six *Bennett* factors. As a result, the Settlement is fair,

reasonable, and adequate under Rule 23, and Plaintiff respectfully request that this Court enter an

order granting final approval to the Settlement Agreement, attorney's fees and costs, and

incentive award.  Plaintiff's counsel have included a Final Approval Order as Exhibit 7.


Dated:   __August 11, 2014__                         Respectfully submitted,

                                                     MATTHEW BENZION, individually
                                                     and on behalf of others similarly situated


                                                     By:   __/s/ Scott D. Owens_____
                                                         Scott D. Owens (No. 597651)
                                                         SCOTT D. OWENS, P.A.
                                                         664 E. Hallandale Beach Blvd.
                                                         Hallandale, FL 33009
                                                         Telephone: (954) 589-0588
                                                         Facsimile: (954) 337-0666
                                                         scott@scottdowens.com

                                                         Edward A. Broderick
                                                         Anthony I. Paronich
                                                         (admitted *pro hac vice*)
                                                         Broderick Law, P.C.
                                                         125 Summer St., Suite 1030
                                                         Boston, MA 02110
                                                         Telephone: (617) 738-7080
                                                         ted@broderick-law.com
                                                         anthony@broderick-law.com

Matthew P. McCue
(admitted *pro hac vice*)
Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Alexander H. Burke
(admitted *pro hac vice*)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com

Daniel J. Marovitch
(admitted *pro hac vice*)
MAROVITCH LAW FIRM, LLC
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
Telephone: (312) 533-1605
dmarovitch@marovitchlaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 11, 2014, a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below, or by U.S. Mail where electronic notice was unavailable.

<u>      /s/ Scott D. Owens      </u>
Scott D. Owens
Florida Bar No. 597651

*One of Plaintiff's Attorneys*

## <u>SERVICE LIST</u>

Bruce E. Reinhart
MCDONALD HOPKINS LLC
505 South Flagler Drive, Suite 300
West Palm Beach, FL 33401
breinhart@mcdonaldhopkins.com

Elizabeth J. Campbell
LOCKE LORD, LLP
3333 Piedmont Road, N.E.
Terminus 200, Suite 1200
Atlanta, GA 30305
ecampbell@lockelord.com

Thomas J. Cunningham
Martin W. Jaszczuk
LOCKE LORD, LLP
111 South Wacker Drive
Chicago, IL 60606
tcunningham@lockelord.com
mjaszczuk@lockelord.com

*Counsel for Defendant Vivint, Inc.*

Donald A. Yarbrough
2000 E. Oakland Park Blvd., Suite 105
Fort Lauderdale, FL 33339
don@donyarbrough.com

*On Behalf of Himself and Objectors*
*Robert and Carole Schwimmer*

Tuam Tran
1731 Ansbury Dr
Houston, TX 77018

Gerald L. Roylance
1168 Blackfield Way
Mountain View, CA 94040

William O. Groth
1820 Butternut Street
Syracuse, NY 13208

Vincent Lucas
PO Box 272
Amelia, OH 45102

Dana Dembrow
1226 Canterbury Drive
Sykesvill, MD 2178-9500

*Objectors*